IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| MARCOS ROMERO, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 6:09-CV-1401-Orl-35GJK |
| | ) | |
| FLORIDA POWER & LIGHT | ) | **ORAL ARGUMENT REQUESTED** |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT FLORIDA POWER & LIGHT COMPANY'S
MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT AS TO LIABILITY**

Defendant Florida Power & Light Company ("FPL") respectfully submits this

Memorandum in opposition to Plaintiffs' Motion for Summary Judgment as to Liability

("Motion").

**PRELIMINARY STATEMENT**

The Motion should be denied in its entirety for at least two independent reasons:

1.      To impose FLSA liability on FPL, each Plaintiff must demonstrate that he

was not properly compensated for work in excess of 40 hours in a specific workweek

after crediting FPL with all previous "premium" compensation paid to that Plaintiff.

Plaintiffs have not pointed to any evidence of record that any Plaintiff has worked

without compensation in excess of 40 hours in a specific workweek, and/or that any

claimed overtime payments exceed the amount of premium compensation that Plaintiff

received from FPL.

2.      Plaintiffs are free to use their meal break predominately for their personal benefit. Therefore, Plaintiffs' meal break is not compensable "work" within the meaning of the Fair Labor Standards Act.

## STATEMENT OF FACTS

Plaintiffs are members of the International Brotherhood of Electrical Workers ("IBEW"). *E.g.*, Deposition of Thomas Connors (Dkt. 136), April 9, 2010, at 42-43 (Connors Dep.); Deposition of Jack Murphy (Dkt. 137), May 21, 2010, at 102-03 ("Murphy Dep."); Deposition of Albert Sala (Dkt. 138), April 1, 2010, at 20-21 ("Sala Dep."). Some of the Plaintiffs are or were IBEW elected officials and/or stewards during 2009-2010. Connors Dep. at 43-44.

At all relevant times, the terms and conditions of FPL's employment of Plaintiffs and other members of the conditionally certified class have been subject to and in accordance with a collective bargaining agreement ("CBA") negotiated between the IBEW and FPL. Declaration of Andrea E. Leitten ("Leitten Decl."), February 25, 2010, ¶ 3 (Dkt. 99 at 28-29). In accordance with the terms of the CBA, each member of the bargaining unit is well-compensated. For example, Plaintiff Connors received approximately $100,000 in salary and benefits from FPL in 2008. Connors Dep. at 114-17.

The CBA provides that persons within FPL's Distribution Business Unit ("DBU") work an eight-hour shift. Those persons who work the "afternoon" or "late" shifts, which Plaintiffs refer to as "the second and third shifts of FPL's Distribution Unit" (Motion at 20), do not receive an unpaid meal break. *E.g.*, Leitten Decl. ¶ 3. Likewise, some persons (depending upon their position and duties) who work the "day" shift do not receive an unpaid meal break. *Id.* Persons who do not receive an unpaid meal break may only eat

during their shift *if* "they have a break."  Deposition of Joe Suarez (Dkt. 168-2), April 21, 2010, at 60 ("Suarez Dep.") ("it may be a 15 minute grab a lunch and go, you know, eat and go"); *see also* note 3 *infra*.

The CBA provides that other persons working the "day" shift, whom Plaintiffs refer to as "first-shifters," may take a 30-minute unpaid meal break.[1]  *E.g.*, Leitten Decl. ¶ 3.[2]  During their unpaid meal break, Plaintiffs can "leave their truck" and, in addition to eating, may engage in a multitude of activities of their choosing for their personal benefit. For example, during their unpaid meal break Plaintiffs can read, rest, have lunch with their spouses, make personal phone calls, surf the Internet, make doctors' appointment, go to a park, even sleep.  Leitten Decl. ¶ 6; Sala Dep. at 52-54; Connors Dep. at 79-82; Murphy Dep. at 75-77; Deposition of Ralph Grant (Dkt. 168-3), July 20, 2010, at 87 ("Grant Dep.").[3]

Plaintiffs admit that if FPL requires them to work during their meal break, they are properly compensated for this time.  Mr. Romero, for example, admits that he "got paid for my lunch . . . when I was called upon to perform repair or other physical/manual work to the power distribution system." (Dkt. 48, Ex. A at 2, ¶ 5); *see also* Leitten Dec.

---

[1] The CBA requires that "first-shifters" bring their meal for consumption during their meal break.  *E.g.*, Suarez Dep. at 43, 97; *see also* Grant Dep. at 42.

[2] Persons who receive an unpaid 30-minute meal break under the CBA are assigned to an 8.5 hour shift.

[3] Because they do not receive an unpaid lunch break, persons working the second and third shifts may not engage in any of these personal activities.  Murphy Dep. at 55-57.

¶¶ 3, 5 & Ex. B thereto; Suarez Dep. at 27; Deposition of Dennis Fedak (Dkt. 168-1), April 13, 2010, at 156-57 ("Fedak Dep."); Connors Dep. at 129, 156-57.[4]

FPL relies on an honor system by which Plaintiffs and the other union members in FPL's DBU record the time they work and the tasks they perform. Connors Dep. at 33-34; Murphy Dep. at 54, 68. Each DBU "crew" has a "person-in-charge" determined in accordance with the CBA. Connors Dep. at 32. Pursuant to FPL's honor system, the "person-in-charge" completes a time sheet each day, and each member of the crew has an opportunity to review the completed time sheet for accuracy before it is submitted to FPL. Murphy Dep. at 67-68; Sala Dep. at 119; Connors Dep. at 166-67; *see also* Leitten Dec., Exs. A & B (copies of completed daily time sheets). FPL only "deducts" 30 minutes as an unpaid meal break when the time sheet the union members submit informs FPL that the persons on the time sheet were not working during the meal break. *See* Sala Dep. at 140-42, 150-51. The person-in-charge also schedules each of the crew's unpaid meal breaks, and decides whether or not to inform FPL of that schedule. Grant Dep. at 54; Connors Dep. at 161-63, 166-68.

To be sure, FPL expects the person-in-charge to listen to an FPL issued radio during any unpaid meal break. Suarez Dep. at 113-15; Murphy Dep. at 46, 70.[5] The reasons for this practice are to allow FPL to contact a crew in the case of an emergency,

---

[4] The Motion concedes that whenever Plaintiffs "go to a job-site during their lunch period" they are properly compensated. Motion at 12 n. 12. Plaintiffs' attempt to avoid this determinative concession by claiming this is an "exception." *Id.* This "exception" argument, of course, is nonsense. Rather, it is clear that *all* of the evidence of record is that FPL did *not* "require[] Plaintiffs, Opt-In Plaintiffs and class members to deduct .2 (30 minutes) each day for their meal periods." *See* Motion at 12.

[5] Plaintiffs have failed to cite to any "parts of materials in the record" that any of them was ever a person-in-charge. *See* Federal Rule of Civil Procedure 56(c)(1)(A). Indeed, Plaintiff Murphy admitted that he was never a person-in-charge. Murphy Dep. at 70.

*i.e.*, a "life-or-death situation," a family emergency, or to determine if any of the crew members desire to work overtime. Grant Dep. at 70; *accord, e.g.*, Suarez Dep. at 22-28. Other members of the crew are *not* required to listen to a radio during their unpaid meal break. Suarez Dep. at 113-15; Murphy Dep. at 46, 70.

FPL contacts a crew by radio very rarely. Grant Dep. at 33-36, 75. As Plaintiff Murphy admitted, there were days during which the crew to which he was assigned received *no radio call during the entire shift.* Murphy Dep. at 71-72, 123. Indeed, Plaintiffs have failed to provide *any evidence showing that any of them was ever contacted by FPL through an FPL radio during their unpaid meal break.*[6]

FPL's Distribution crews are assigned to large "bucket" trucks which enable them to maintain and repair FPL's distribution system, including electric lines hung high above the ground. Connors Dep. at 35-37. FPL therefore prohibits its DBU crews assigned to large "bucket" trucks from "Any stops other than those associated with an employee's work assignments" absent "prior authorization by supervision." Motion, Ex. B (Dkt. 166-2) ¶ 7(a). Thus, if any of the Plaintiffs seek to go someplace (such as a restaurant or drive-through) they may do so with "prior authorization by supervision." Motion, Ex. B (Dkt. 166-2) ¶ 7(a), (c), (e). Plaintiffs have failed to provide *any evidence that any of them was ever denied such authorization.* Indeed, the members of the crew to which Plaintiff Connors was assigned have never been refused authorization to "get a sandwich during the meal break." Connors Dep. at 96, 133.

---

[6] FPL asked Plaintiffs to identify this precise information. Rather than being able to identify any actual radio communication during their unpaid meal break, Plaintiffs were able to only identify the possible reasons why a crew "might" be contacted by FPL radio *during the shift.* (Dkt. 162 at 4 n. 1.)

Plaintiffs instituted this action during the period the IBEW and FPL were

negotiating the most recent CBA between them. *See* Connors Dep. at 86. Plaintiffs did

not request that the IBEW negotiate over Plaintiffs' unpaid meal break, or any restrictions

on Plaintiffs' use of that time. Sala Dep. at 36-38. Indeed, Mr. Sala admitted that he

"never" complained to the IBEW that he was working during his unpaid meal break but

had not been properly compensated. Sala Dep. at 36-37. Plaintiffs have therefore waived

any claim under the CBA that FPL owes them compensation for any unpaid meal break

whether as regular time (in those weeks Plaintiffs worked 40 hours or less) or overtime

(in those weeks Plaintiffs worked in excess of 40 hours).[7]

## ARGUMENT

### I.     APPLICALBLE LEGAL STANDARDS

#### A.     Summary Judgment Standard.

Plaintiffs' burden is well-settled and well known to this Court. *E.g., Allen v.*

*Board of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1313-14 (11th Cir. 2007). Summary

judgment may only be granted when the moving party demonstrates there is "no genuine

issue as to any material fact and that the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(c). Which facts are material is determined by the applicable

substantive law, here the FLSA. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986). A genuine issue of material fact exists when the evidence is "such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at

248. "The moving party bears the burden of proof, and the district court should 'view all

---

[7] Indeed, the IBEW has never objected to FPL's practices complained of here during the more than 30 years such practices have been in effect. *See* Motion at 21.

evidence and make all reasonable inferences in favor of the party opposing summary judgment.'" *Allen*, 495 F.3d at 1313 (citing *Anderson*, 477 U.S. at 255 and *Whatley v. CNA Ins. Cos.*, 189 F.3d 1310, 1313 (11th Cir.1999)).  As demonstrated below, Plaintiffs have utterly failed to meet their burden and therefore the Motion must be denied.

**B.     The Fair Labor Standards Act.**

Congress enacted the Fair Labor Standards Act ("FLSA") in 1938 to ensure that workers receive "a fair day's pay for a fair day's work."[8] *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 578 (1942).  Through the FLSA, Congress sought to protect workers from two factors: "the evil of 'overwork' as well as 'underpay.'" *Id.*  Thus, it is well-settled that, where, as here, a worker's collective bargaining agreement ensures payment above the FLSA minimum wage, a worker's sole FLSA claim can relate *only* to unpaid "overtime" as defined by the FLSA, that is, unpaid hours worked in excess of 40 in a specific workweek.  29 U.S.C. 207(a); *Conzo v. City of New York*, 667 F. Supp. 2d 279, 284 (S.D.N.Y 2009) (It is well-settled that the "overtime requirements of the FLSA do not apply until an employee has worked in excess of the statutory overtime requirement of 40 hours per week").  Indeed, Plaintiffs concede that their claim here is limited to "overtime wages" under the FLSA.  Motion at 2; Complaint ¶¶ 9-10, 15-16.

"An employee who brings suit for unpaid overtime compensation under the FLSA bears the burden of proving, with *definite and certain evidence*, that he performed work for which he was not compensated properly." *Hesseltine v. Goodyear Tire & Rubber Co.*, 391 F. Supp.2d 509, 516 (E.D. Tex. 2005) (emphasis added) (citing, *inter alia*,

---

[8] In light of the amounts they receive from FPL in accordance with the CBA, *see* p. 2 *supra*, Plaintiffs cannot complain that they do not receive a "fair day's pay."

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87, (1946)); *see also, e.g.*, *Allen*, 495 F.3d at 1315 (to establish liability, "a FLSA Plaintiff bears the burden of proving that he or she worked overtime without compensation").

In determining whether a worker has been properly compensated, the FLSA expressly provides the employer with three categories of "credits" which are applied against any unpaid "overtime wages." 29 U.S.C. § 207(e)(5)-(7), (h)(2). "The statute identifies three categories of creditable premium pay: (1) compensation for excess hours, § 207(e)(5), (2) compensation for weekend and holiday work, § 207(e)(6), and (3) compensation pursuant to an agreement, § 207(e)(7)." *Dice v. Weiser Security Servs.*, No. 06-61133-CIV, 2008 WL 269513, at \*4 (S.D. Fla. Jan. 29, 2008). Further, the Eleventh Circuit "permits an employer to credit accumulated premium pay against incurred overtime. *See Kohlheim v. Glyn County*, 915 F.2d 1473, 1481 (11th Cir.1990) (holding that employer was 'allowed to offset all previously paid overtime premiums')." *Dice, supra*, at \*4.

Therefore, to establish liability under the FLSA, each Plaintiff is required to show through "definite and certain evidence" he has worked overtime hours[9] for which he has not been properly compensated *after crediting FPL with all "premium payments" the respective Plaintiff has received*. None of the Plaintiffs have even attempted to cite to

---

[9] It is well-settled an employee cannot recover if the period of overtime worked on a given day is "*de minimis*". *See, e.g., Burton v. Hillsborough Cty.*, 181 Fed Appx. 829, (11th Cir. 2006), *cert. denied*, 549 U.S. 1019 (2006) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946), *superseded by statute on other grounds as stated in Carter v. Panama Canal Co.*, 463 F.2d 1289, 1293 (D.C.Cir.1972)). Thus, Plaintiffs here may not be heard to complain that they have been required to respond during a meal break for a minute or two to a radio inquiry but have not received overtime compensation for such *de minimis* time.

any "parts of materials in the record" to meet this burden.[10] *See* Federal Rule of Civil Procedure 56(c)(1)(A).

Plaintiffs' total failure in this regard is not surprising. Review of a sample of the Plaintiffs' time records shows that Plaintiffs received ***more compensation (due to premium compensation) from FPL than the FLSA requires***. For example, during the four workweeks between December 29, 2007 and January 25, 2008, Plaintiff Sala worked less than 40 hours in three of the four weeks (even if his unpaid meal breaks are counted as "work".) During these three weeks, Mr. Sala received 3.5 hours of premium wages pursuant to the CBA. These 3.5 hours exceed any claim for unpaid meal breaks during the one week in which Mr. Sala worked more than 40 hours. Sala Dep. at 94-142 & Ex. 13 (a copy of which is attached hereto as Exhibit [A]). Similarly, Plaintiff Connors received far more in premium compensation under the CBA during this same four-week period than he could claim under the FLSA for unpaid meal breaks. Connors Dep. at 148-59 & Ex. 21 (a copy of which is attached hereto as Exhibit [B]).

> **C.    To Constitute "Work" under the FLSA, an Employee Must Spend His/Her Time Predominately for the Benefit of the Employer.**

As Plaintiffs rightly recognize, one primary issue presented here is whether Plaintiffs unpaid meal break "constitutes work for purposes of the FLSA" and therefore

---

[10] Likewise, the Motion does not even attempt to cite to any "parts of materials in the record" as to any "Opt-in Plaintiffs" or other potential members of the conditionally certified class. Indeed, the record is devoid of any evidence as to what such persons did or did not do during their employment by FPL. Therefore, this Court cannot grant the Motion as to any such persons. Plaintiffs reliance in this regard on *Shaw v. Bank of America, N.A.*, 2010 U.S. Dist Lexis 117582 (July 29, 2010 N.D. Ga.), is quite puzzling. There, the court *denied* the plaintiff's motion for partial summary judgment (although it did grant a portion of the defendant's motion). Further, Plaintiffs are incorrect in their assertion that "Opt-in Plaintiffs" have "joined the case." Motion at 3. If, for example, this action is decertified or not finally certified as a collective action, such persons are not part of this action.

may be compensable as overtime under the FLSA. Motion at 22 (quoting *Birdwell v. City of Gadsden*, 970 F.2d 802, 807 (11th Cir. 1992)); 29 U.S.C. § 207(a).

The FLSA does not by its terms define "work", but the Supreme Court has. "Work" within the meaning of the FLSA is time spent "primarily for the benefit of the employer and his business." *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 598 1944); *see also, e.g., Dade Cty. v. Alvarez,* 124 F.3d 1380, 1384 (11th Cir. 1997). As the Eleventh Circuit has put it:

> The question of whether the employees are working during this time for purposes of the FLSA depends on the degree to which the *employee may use the time for personal activities*. This question has been formulated as whether "the time is spent *predominately* for the employer's benefit or for the employee's."

*Birdwell* 970 F.2d at 807 (emphasis added) (quoting *Armour & Co. v. Wantock,* 323 U.S. 126, 133 (1944); citation omitted).

Thus, in determining whether a meal break is "work" within the meaning of the FLSA, the Courts of Appeal, including the Eleventh Circuit, unanimously look to see whether that time is spent "predominately" for the employee's or employer's benefit. *See, e.g., Roy v. County of Lexington,* 141 F.3d 533, 544 (4th Cir.1998); *Bernard v. IBP, Inc.,* 154 F.3d 259, 264-65 (5th Cir.1998); *Myracle v. Gen. Elec. Co.,* 33 F.3d 55, 1994 WL 456769 (6th Cir.1994); *Alexander v. City of Chicago,* 994 F.2d 333, 337 (7th Cir.1993), *cert. denied,* 520 U.S. 1228 (1997); *Henson v. Pulaski County Sheriff Dep't,* 6 F.3d 531, 534 (8th Cir.1993); *Lamon v. City of Shawnee, Kansas,* 972 F.2d 1145, 1155 (10th Cir.1992), *cert. denied,* 507 U.S. 972 (1993); *Avery v. City of Talladega,* 24 F.3d 1337, 1345-46 (11th Cir. 1994); *see also, e.g., Haviland v. Catholic Health Initiatives-Iowa Corp.,* No. 4:07-cv-018, 2010 WL 3118698, at *9-15 (S.D. Iowa Aug. 6, 2010)

(explaining Supreme Court precedent requires application of the "predominant benefit" standard; any "completely relieved from duty" test is improper and inconsistent with that Supreme Court precedent).[11]

Despite this directive from the Supreme Court – and the concomitant consensus among the Courts of Appeal – as to the definition of "work" for purposes of overtime compensation under the FLSA, Plaintiffs contend that the Eleventh Circuit *alone* applies a different standard for "meal break cases involving civilians." Motion at 7 n. 5. Indeed, Plaintiffs would have this Court hold that, although it does not constitute "work" under the FLSA, Plaintiffs' meal break is nonetheless compensable under the FLSA.

Plaintiffs are wrong: There is no "civilian meal break" exception to the predominant benefit standard or the FLSA definition of "work."

Plaintiffs cite to a single 20-year-old Eleventh Circuit case, *Kohlheim v. Glynn Cty.*, 915 F.2d 1473 (11th Cir. 1990), to support their assertion that a "completely relieved of duty" test applies to a "civilian meal break." Examination of *Kohlheim*, however, reveals that the Eleventh Circuit did *not* disregard the Supreme Court's definition of "work" and apply some "completely relieved of duty" test applicable to a "civilian meal break."[12]

---

[11] As the Eleventh Circuit has stated, to "be construed as work time for purposes of the FLSA," the employer must "severely restrict" the employee's use of the time. *Birdwell*, 870 F.2d at 810 (holding employees "on-call" time "was not so severely restricted" that it could not be "used predominantly for [employees] benefit").

[12] Plaintiffs also rely upon a Department of Labor interpretive bulletin, 29 C.F.R. § 719.85(a). This "interpretative bulletin" is not binding on the courts, as even the Department of Labor expressly recognizes that "interpretations of the [FLSA] are made by the courts." 29 C.F.R. § 785.2(a).

11

First, in *Kohlheim*, the Court identified the test to be applied "in meal period cases": "what matters in meal period cases is whether the employees are subject to *real limitations* on their personal freedom which inure to the *benefit of the employer*." 915 F. 2d at 1477 n. 19. This is the same inquiry the Eleventh Circuit used in applying the predominant benefit standard in *Birdwell* when it stated that the employer must "severely restrict" the employee's use of the time to constitute "work."[13]  *Birdwell*, 870 F.2d at 810.

Second, the FLSA claimants in *Kohlheim* were firefighters included in the same "public agency" exemption, 29 U.S.C. § 207(k), at issue in *Avery, supra*, and applicable to the law enforcement employees there. *Kohlheim*, 915 F.2d at 1476 ("29 U.S.C. § 207(k) contains special requirements applicable only to public policemen and firefighters"); *Avery*, 24 F.3d at 1345-46. As noted above, Plaintiffs admit that the Eleventh Circuit in *Avery* applied the "predominant benefit" test in determining the employees' meal break was *not* compensable under the FLSA. Motion at 7 n. 5; *Avery*, 24 F.3d at 1347.[14]

Third, "law enforcement" employees have the same FLSA rights to overtime granted to civilians (indeed all workers in interstate commerce) by 29 U.S.C. 207(a). There is not a separate definition of work for law enforcement. To adopt some "civilian

---

[13] Although the Court in *Chao v. Tyson Foods, Inc.*, 568 F. Supp. 2d 1300, 1307 n. 4 (N.D. Ala. 2008) erroneously suggested that *Kohlheim* applied a test other than the "predominant benefit" standard, it noted that due to decisions in the last 20 years it "would be unsurprised if the Eleventh Circuit is also persuaded to reject that standard in favor of the predominant benefit standard." *See also* pp. 16-17 *infra*.

[14] Apparently Plaintiffs contend that the "public agency" exemption applicable only to "fire protection or law enforcement activities" is applied in two separate ways, one for fire protection, the other for law enforcement. To simply state Plaintiffs' contention is to demonstrate its fallacy.

meal time" exception would mean that law enforcement employees have fewer rights than civilians under the FLSA.

In sum, Plaintiffs must show that time they claim for overtime was spent predominately for FPL's benefit.

## II.   FPL IS NOT LIABLE TO ANY OF THE PLAINTIFFS FOR UNCOMPENSATED OVERTIME.

### A.   Plaintiffs Have Failed to Proffer Undisputed Record Facts that Each Worked Overtime for which he was not Properly Compensated.

As noted above, for any Plaintiff to establish that FPL is liable to him under the FLSA for unpaid overtime, that Plaintiff must show that he has worked overtime for which he has not been properly compensated, and that such unpaid amount exceeds the amount of "premium payments" he has received from FPL. *See* pp. 7-9 *supra*. There are no facts of record – let alone undisputed facts – that 1) any Plaintiff worked any hours in excess of 40 for which he was not properly compensated, or 2) any claimed amount exceeds the amount of premium compensation the respective Plaintiff received under the CBA. Indeed, the evidence of record is directly to the contrary. *See, e.g.*, Sala Dep. at 94-142 & Ex. 13; Connors Dep. at 148-59 & Ex. 21. The Motion should therefore be denied in its entirety on this ground alone.

### B.   Plaintiffs' Meal Break is Not Work.

Plaintiffs contend (Motion at 11-12) that Plaintiffs' meal break is "work" based on two allegedly undisputed facts: 1) Plaintiffs "could not leave the truck or job site . . . to either sit down and eat or even buy food to take out"; and 2) Plaintiffs "were required

to monitor and respond to their radios during lunch."[15]  Plaintiffs' testimony alone demonstrates that neither of these purported "facts" is true, let alone undisputed, and the Motion must therefore be denied.

As noted above, the evidence of record uniformly demonstrates that during their meal break Plaintiffs *can* "leave the truck or job site."  Indeed, Plaintiff Sala testified that, among other things, he could go to a park during the meal break to eat his meal. Sala Dep. at 52-54.  Indeed, Mr. Connors testified that in every instance it has been requested, authorization has been received to go to a restaurant to pick up a meal.  Connors Dep. at 96, 133.  These are among the many activities in which each Plaintiff may engage, including reading, having lunch with their spouse, making personal phone calls, surfing the Internet, resting, even sleeping.  Leitten Decl. ¶ 6; Sala Dep. at 52-54; Connors Dep. at 79-82; Murphy Dep. at 75-77; Grant Dep. at 87.

Further, Plaintiffs point to no evidence that any of the Plaintiffs was ever required to listen to an FPL radio during their meal break.  Only the person-in-charge is expected to listen to an FPL-issued radio during a meal break in case of an FPL or crew member family emergency.  Suarez Dep. at 22-28, 113-15; Grant Dep. at 70; Murphy Dep. at 46, 70.  And Plaintiffs have failed to cite to any "parts of materials in the record" that any of them was ever a person-in-charge, which is hardly surprising in light of Plaintiff Murphy's admission that he was never a person-in-charge.  Murphy Dep. at 70.

---

[15] Plaintiffs make various "statements of fact" which they claim are supported by the record in their ineffective attempt to convince the Court that these two "facts" are undisputed. *See* Motion at 11-24. As shown below, these two "facts" are not only disputed, but the record makes clear they are each untrue. FPL believes that it is not productive here to show that Plaintiffs' purported supporting "statements of fact" are not supported by the evidence of record, taken out of context, misstatements, and/or are immaterial to proper resolution of the Motion.  FPL has done so in FPL's accompanying Response to Plaintiffs' Statement of Undisputed Material Facts in Support of Plaintiffs' Motion for Summary Judgment as to Liability filed herewith and incorporated herein.

Even if either of these purported facts was true – and neither is – Plaintiffs' meal break would still not constitute "work" under the FLSA. The cases are legion holding that a meal break is not compensable even though the employees are required to be on call and "restricted in their movement." The court's decision in *Bridges v. Amoco Polymers, Inc.*, 19 F. Supp. 2d 1375, 1379 (S.D. Ga. 1997) is particularly instructive in this regard. In granting the employer summary judgment on the employee's FLSA claim, the court stated:

> Here, while the Plaintiff is *subject to being recalled from her meal break*, she does not have any significant responsibilities and is not severely restricted. She is not required to stay at her duty station and *can eat anywhere at the plant*, but must inform her supervisor where she will be. . . . Even if Plaintiff had presented evidence that interruptions did in fact occur frequently, which she did not, those interruptions would not rise to the level of significant responsibilities or severe restrictions making her uninterrupted meals compensable. [Emphasis added.]

In *Avery* the Eleventh Circuit affirmed summary judgment for the employer. There, the employees were required to "leave their radios on" and were "restricted in their movement," but were otherwise "free to spend their meal breaks in any way they wish" just as Plaintiffs are here. 24 F.3d at 1347; *accord, e.g., Arrington v. City of Macon*, 986 F. Supp. 1474, 1480 (M.D. Ga. 1997) (granting employer's motion for partial summary judgment where employees were "subject to immediate call" and could only go to places established by the employer's procedures"); *Myracle, supra*, 33 F.3d 55, 1994 WL 456769 at *2, 5 (affirming judgment in favor of employer where plaintiffs, although sometimes interrupted by an emergency, were free to choose the time of their meal period); *O'Hara v. Menino*, 253 F. Supp. 147, 151 (D. Mass. 2003) (granting employer summary judgment where employee "remains available to receive emergency

15

radio calls at all times"); *Agner v. United States*, 8 Cl. Ct. 635, 636 (1985) (granting

employer summary judgment where employees were required to remain on the

employer's premises, have their radios on, and answer any calls from supervisors).[16]

Even were this Court to adopt some "civilian meal break exception" subject to a

"completely relieved of duty" test, Plaintiffs' meal break would still not constitute

"work." In *Chao*, relied on by Plaintiffs (Motion at 7), the court held that the FLSA

claimants' meal break was *not* compensable and granted the defendant's motion for

partial summary judgment. 568 F. Supp. 2d at 1310. During their meal break, the *Chao*

plaintiffs were required to perform the following duties: "doff their protective outerwear

at the beginning of the meal period, wash and sanitize their equipment, then don the

equipment again at the end of the break." Nonetheless, the Court found: "The

employees are 'completely relieved from duty' as that standard is applied in this circuit,

thereby satisfying the requirements of a 'bona fide meal period' under § 785.19." *Id.*

The Court explained the difference between these duties and those in *Kohlheim*.

The *Chao* court stated:

> In *Kohlheim*, the court found that firefighters retained "significant
> affirmative responsibilities" during their meal periods, because they were
> expected to remain at their work stations, subject to emergency calls,
> while they ate their meals. As the *Bridges* court noted, such duties
> constitute "the bulk of a fireman's job."
>
> Similar to the court's observation in *Bridges*, however, "a plant worker's
> job is to *work* at their station." During the second meal period at issue
> here, the employees are not suffered to work at their stations, or perform

---

[16] Plaintiffs may not take any comfort from *Hoffman v. St. Joseph's Hospital*, No. 1:97-CV-0753-RLV, 1998 WL 283540 (N.D. Ga. April 14, 1998). The *Hoffman* court misconstrued Eleventh Circuit precedent as set forth, *inter alia*, in *Birdwell*, *Avery*, and *Kohlheim*. The *Bridges* court, on the other hand, accurately analyzed, synthesized, and applied this precedent to reach the proper result it did.

any other "significant affirmative responsibilities" which are even remotely analogous to their on-duty tasks.

568 F. Supp. 2d at 1310 (emphasis in original; citations omitted).

As in *Chao*, Plaintiffs here are not required to "work at their stations, or perform any other 'significant affirmative responsibilities' which are even remotely analogous to their on-duty tasks," which Plaintiff Romero stated are "to perform repair or other physical/manual work to the power distribution system." (Dkt. 48, Ex. A at 2, ¶ 5). Therefore, Plaintiffs, like the claimants in *Chao,* are "completely relieved of duty."

Because Plaintiffs meal time is not "work" under the FLSA, the Motion should be denied and summary judgment entered in FPL's favor. *See* Federal Rule of Civil Procedure 56(f)(1).[17]

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 3.01(j) for the District Court for the Middle District of Florida, FPL respectfully requests that oral argument be heard on the Motion. Counsel estimates that a hearing on the Motion would require a total of 30 minutes.

---

[17] Plaintiffs' reliance on *Beasley v. Hillcrest Med. Ctr.*, 78 Fed. Appx. 67 (10th Cir. 2003), is misplaced. There, the plaintiffs introduced evidence that they were "working on a computer" which the court determined "could support a finding that they spent those meals predominantly for the benefit of" the employer. *Id.* at 71. Thus, the court found that the plaintiffs' evidence "raised a triable issue whether their 'time or attention [was] taken up principally by official responsibilities that prevent[ed them] from comfortably and adequately passing the mealtime,'" and remanded the case to the district court "for further proceedings on this issue." *Id.* (quoting *Lamon v. City of Shawnee*, 972 F.2d 1145, 1157-58 (10th Cir. 1992)). The court did *not* find that the "lunch periods were compensable," as Plaintiffs claim. Motion at 9.

Plaintiffs' reliance on *Haviland, supra*, is even more misplaced. There, the Court expressly rejected the "completely relieved of duty" test as inconsistent with the Supreme Court's definition of work. 2010 WL 3118698 at *9-15. Additionally, the *Haviland* court noted that 1) "an employer's requirement that an employee carry a radio and respond if necessary" does *not* "convert[] meal time to work time"; and 2) "requiring an employee to remain on the employer's premises does not convert meal break time into compensable working time." *Id.* at *19-20. Therefore, the *Haviland* court granted *the employer's* motion for summary judgment finding that the plaintiffs' meal time was *not* compensable. *Id.* at *31. The court did *not*, as Plaintiffs claim, "deem[] those meal break (*sic)* compensable," Motion at 10, under any standard.

## CONCLUSION

For all the foregoing reasons, Plaintiffs' Motion should be denied in its entirety

and summary judgment entered in favor of FPL.  *See* Federal Rule of Civil Procedure

56(f)(1).

Dated:  January 7, 2011                                      Respectfully submitted,

Ellen S. Malasky                                             Gary K. Harris
Florida Bar No. 724599                                       **Trial Counsel**
Florida Power & Light Company                                Florida Bar No. 0065358
700 Universe Boulevard                                       gharris@bsfllp.com
Juno Beach, FL 33408                                         Karen C. Dyer
Telephone: (561) 691-7321                                    Florida Bar No. 716324
Facsimile: (561) 691-7103                                    kdyer@bsfllp.com
ellen.malasky@fpl.com                                        Boies, Schiller & Flexner LLP
                                                             121 South Orange Avenue, Suite 840
                                                             Orlando, FL  32801
                                                             Telephone:  (407) 425-7118
                                                             Facsimile:  (407) 425-7047

*Attorneys for Defendant Florida Power & Light Company*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of January, 2011, I electronically filed

the foregoing Defendant Florida Power & Light Company's Memorandum in Opposition

to Plaintiffs' Motion for Summary Judgment as to Liability with the Clerk of the Court

by using the CM/ECF system, which will send a notice of electronic filing to Mauricio

Arcadier, Arcadier & Associates, P.A., Suite 304, 2815 W. New Haven Avenue,

Melbourne, Florida 32904, and Gregg I. Shavitz and Keith M. Stern, Shavitz Law Group,

P.A., 1515 S. Federal Highway, Suite 404, Boca Raton, FL 33432.

s/ Gary K. Harris
Gary K. Harris

18