IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| MARCOS ROMERO, *et al.*, | ) | |
| | ) | **DISPOSITIVE MOTION** |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 6:09-CV-1401-Orl-35-GJK |
| | ) | |
| FLORIDA POWER & LIGHT COMPANY, | ) | **ORAL ARGUMENT REQUESTED** |
| | ) | |
| Defendant. | ) | |

**DEFENDANT FLORIDA POWER & LIGHT COMPANY'S**
**MOTION FOR SUMMARY JUDGMENT**

Defendant Florida Power & Light Company ("FPL"), pursuant to Federal Rule of Civil Procedure 56(a), respectfully moves for summary judgment as to each of the Named and opt-in Plaintiffs on their respective individual claim that FPL is liable to each such person for unpaid overtime wages. FPL states that the evidentiary record on file demonstrates there is no genuine issue as to any material fact, and that FPL is entitled to summary judgment against each claimant as a matter of law.

In its response (Dkt. 172) to Plaintiffs' Motion for Summary Judgment as to Liability (Dkt. 166), FPL requested that the Court enter summary judgment in FPL's favor pursuant to recently amended Federal Rule of Civil Procedure 56(f)(1). Because of the amended Rule's very recent vintage, FPL is filing this Motion out of an abundance of caution to ensure that the Court addresses and rules upon FPL's request that summary judgment be entered in its favor against each individual Named and opt-in Plaintiff, as well as to obtain the procedures available in moving for summary judgment.

In support of its Motion for Summary Judgment ("Motion"), FPL states as follows:

**PRELIMINARY STATEMENT**

As Plaintiffs candidly admit, the Named and opt-in Plaintiffs' individual claims are straightforward. Specifically, Plaintiffs assert that each of them was "working" during their unpaid 30-minute meal break. The "work" Plaintiffs claim they were performing during the unpaid 30-minute meal break is limited to two items: each Plaintiff a) "could not leave the truck or job site to go anywhere" (Dkt. 166 at 11); and b) was "required to monitor" an FPL-issued radio. (Dkt. 166 at 11-12.)

FPL is entitled to summary judgment in its favor as to each Named and opt-in Plaintiff for at least two independent reasons:

1. Even if Plaintiffs' two assertions were true – and the evidence of record makes clear each is indisputably *not true* – neither item, taken alone or together, constitutes "work" within the meaning of the Fair Labor Standards Act. Therefore, because Plaintiffs do not and cannot identify any time an individual Plaintiff "worked" overtime but was not properly compensated, FPL is entitled to summary judgment as to each Named and opt-in Plaintiff.

2. Even if this did constitute "work," each Plaintiff, to receive an FLSA judgment, must demonstrate that he was not properly compensated for work in excess of 40 hours in a specific workweek after crediting FPL with all "premium" compensation paid to that Plaintiff. The record does not contain evidence that each Named and opt-in Plaintiff worked without compensation *in excess of 40 hours in a specific workweek*,

and/or that any claimed overtime payments due to a particular Named or opt-in Plaintiff exceed the amount of premium compensation that particular Plaintiff received from FPL.

## STATEMENT OF UNDISPUTED FACTS

1. The Named Plaintiffs[1] are members of the International Brotherhood of Electrical Workers ("IBEW"). *E.g.*, Deposition of Thomas Connors (Dkt. 136), April 9, 2010, at 42-43 (Connors Dep.); Deposition of Jack Murphy (Dkt. 137), May 21, 2010, at 102-03 ("Murphy Dep."); Deposition of Albert Sala (Dkt. 138), April 1, 2010, at 20-21 ("Sala Dep.").

2. Some of the Plaintiffs are or were IBEW elected officials and/or stewards during 2009-2010. Connors Dep. at 43-44.

3. At all relevant times, the terms and conditions of FPL's employment of each of the Named and opt-in Plaintiffs have been subject to and in accordance with a collective bargaining agreement ("CBA") negotiated between the IBEW and FPL. Declaration of Andrea E. Leitten ("Leitten Decl."), February 25, 2010, ¶ 3 (Dkt. 99 at 28-29).

4. In accordance with the terms of the CBA, each member of the bargaining unit is well-compensated. For example, Plaintiff Connors received approximately $100,000 in salary and benefits from FPL in 2008. Connors Dep. at 114-17.

5. The CBA provides that persons within FPL's Distribution Business Unit ("DBU") work an eight-hour shift. Those persons who work the "afternoon" or "late" shifts, which Plaintiffs refer to as "the second and third shifts of FPL's Distribution Unit"

---

[1] As more fully set forth in FPL's Motion to Modify the Amended Case Management and Scheduling Order (Dkt. 177), FPL has not had the opportunity to take discovery of any of the 139 Plaintiffs who opted-in to this matter in response to the Court-authorized notice (out of the more than 1,000 who were mailed notice). (*See* Dkt. 175.)

(Dkt. 166 at 20), do not receive an unpaid meal break. *E.g.*, Leitten Decl. ¶ 3.

6. As set forth in the CBA, some employees (depending upon their position and duties) within FPL's DBU who work the "day" shift do not receive an unpaid meal break.[2] *E.g.*, Leitten Decl. ¶ 3.

7. Persons who do not receive an unpaid meal break may only eat during their shift ***if*** "they have a break." Deposition of Joe Suarez (Dkt. 168-2), April 21, 2010, at 60 ("Suarez Dep.") ("it may be a 15 minute grab a lunch and go, you know, eat and go"); *see also* note 4 *infra*.

8. The CBA provides that other persons working the "day" shift, whom Plaintiffs refer to as "first-shifters" (Dkt. 166 at 20) may take a 30-minute unpaid meal break. *E.g.*, Leitten Decl. ¶ 3.[3]

9. The CBA requires Plaintiffs to bring their meal for consumption during their meal break. *E.g.*, Suarez Dep. at 43, 97; *see also* Grant Dep. at 42.

10. Plaintiffs admit that during their unpaid meal break Plaintiffs can "leave their truck." *E.g.*, Connors Dep. at 77-79; Sala Dep. at 52-54.

11. In addition to eating, Plaintiffs may engage in a multitude of activities of their choosing for their personal benefit during their unpaid meal break. For example, during their unpaid meal break Plaintiffs can read, rest, have lunch with their spouses, make personal phone calls, surf the Internet, make doctors' appointment, go to a park, even sleep. Leitten Decl. ¶ 6; Sala Dep. at 52-54; Connors Dep. at 79-82; Murphy Dep. at 75-77;

---

[2] These persons are not included within the conditionally certified class.

[3] Persons who receive an unpaid 30-minute meal break under the CBA are assigned to an 8.5 hour shift.

Deposition of Ralph Grant (Dkt. 168-3), July 20, 2010, at 87 ("Grant Dep.").[4]

12. Plaintiffs admit that if FPL requires them to work during their meal break, they are properly compensated for this time. Mr. Romero, for example, admits that he "got paid for my lunch . . . when I was called upon to perform repair or other physical/manual work to the power distribution system." (Dkt. 48-2 at 2, ¶ 5); *see also* Leitten Dec. ¶¶ 3, 5 & Ex. B thereto; Suarez Dep. at 27; Deposition of Dennis Fedak (Dkt. 168-1), April 13, 2010, at 156-57 ("Fedak Dep."); Connors Dep. at 129, 156-57.

13. Plaintiffs expressly concede that whenever Plaintiffs "go to a job-site during their lunch period" they are properly compensated. Dkt. 166 at 12 n. 12.

14. Plaintiffs are not required to deduct 30 minutes for their meal break each day. (Dkt. 48-2 at 2, ¶ 5); Leitten Dec. ¶¶ 3, 5 & Ex. B thereto; Suarez Dep. at 27; Deposition of Dennis Fedak (Dkt. 168-1), April 13, 2010, at 156-57 ("Fedak Dep."); Connors Dep. at 129, 156-57; Dkt. 166 at 12 n. 12.

15. FPL relies on an honor system by which Plaintiffs and the other union members in FPL's DBU record the time they work and the tasks they perform. Connors Dep. at 33-34; Murphy Dep. at 54, 68.

16. Each DBU "crew" has a "person-in-charge" determined in accordance with the CBA. Connors Dep. at 32.

17. There is no evidence of record that any Named or opt-in Plaintiff was ever a person-in-charge of a crew of "first-shifters."

18. Plaintiff Murphy was never a person-in-charge. Murphy Dep. at 70.

---

[4] Because they do not receive an unpaid lunch break, persons working the second and third shifts may not engage in any of these personal activities. Murphy Dep. at 55-57.

19. Pursuant to FPL's honor system, the person-in-charge completes a time sheet each day, and each member of the crew has an opportunity to review the completed time sheet for accuracy before it is submitted to FPL. Murphy Dep. at 67-68; Sala Dep. at 119; Connors Dep. at 166-67; *see also* Leitten Dec., Exs. A & B (copies of completed daily time sheets).

20. FPL only "deducts" 30 minutes as an unpaid meal break when the time sheet the union members submit informs FPL that the persons on the time sheet were not working during the meal break. *See* Sala Dep. at 140-42, 150-51.

21. The person-in-charge schedules each of the crew's unpaid meal breaks, and decides whether or not to inform FPL of that schedule. Grant Dep. at 54; Connors Dep. at 161-63, 166-68.

22. FPL expects the person-in-charge to listen to an FPL-issued radio during any unpaid meal break. Suarez Dep. at 113-15; Murphy Dep. at 46, 70.

23. The reasons FPL expects a person-in-charge to listen to an FPL-issued radio during an unpaid meal break are to allow FPL to contact a crew in the case of an emergency, *i.e.*, a "life-or-death situation," a family emergency, or to determine if any of the crew members desire to work overtime. Grant Dep. at 70; *accord*, *e.g.*, Suarez Dep. at 22-28.

24. Other members of the crew are *not* required to listen to a radio during their unpaid meal break. Suarez Dep. at 113-15; Murphy Dep. at 46, 70.

25. FPL contacts a crew by radio very rarely. Grant Dep. at 33-36, 75.

26. There are days during which a DBU crew receives *no radio call during the entire shift*. Murphy Dep. at 71-72, 123.

27. There is no evidence of record that each Named and opt-in Plaintiff was

*contacted by FPL through an FPL radio during their unpaid meal break on a specific day*.[5]

28. FPL's DBU crews are assigned to large "bucket" trucks which enable them to maintain and repair FPL's distribution system, including electric lines hung high above the ground. Connors Dep. at 35-37.

29. FPL prohibits its DBU crews assigned to large "bucket" trucks from "Any stops other than those associated with an employee's work assignments" absent "prior authorization by supervision." (Dkt. 166-2 ¶ 7(a).)

30. Each Named and opt-in Plaintiffs may go to a restaurant or drive-through during their unpaid meal break with "prior authorization by supervision." (Dkt. 166-2, ¶ 7(a), (c), (e).)

31. The members of the crew to which Plaintiff Connors was assigned have never been refused authorization to "get a sandwich during the meal break." Connors Dep. at 96, 133.

32. Plaintiffs have failed to provide *any evidence that any of them – let alone* ***each*** *of them – was ever denied authorization* to go to a restaurant or drive-through during their unpaid meal break.

33. Plaintiffs instituted this action during the period the IBEW and FPL were negotiating the most recent CBA between them. *See* Connors Dep. at 86.

34. Plaintiffs did not request that the IBEW negotiate over Plaintiffs' unpaid meal break, or any claimed restrictions on Plaintiffs' use of that time. Sala Dep. at 36-38.

35. Mr. Sala never complained to the IBEW that he was working during his

---

[5] FPL asked Plaintiffs to identify this precise information. Rather than identifying any actual radio communication(s) during their unpaid meal break, Plaintiffs were able to only identify the possible reasons why a crew "might" be contacted by FPL radio *during the shift*. (Dkt. 162 at 4 n. 1.)

**MEMORANDUM OF LEGAL AUTHORITY**

## I. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment "shall" be granted if the "movant shows that there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247 (1986).

Although the moving party has the initial burden of demonstrating the absence of a genuine issue of material fact, the movant "may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on an issue which that party would have the burden of proof at trial." *Philips Credit Corp. v. Regent Health Group, Inc.*, 953 F. Supp. 482, 506 (S.D.N.Y. 1997) (citing *Celotex*, 477 U.S. at 323); *accord, e.g.*, *Sellers v. GMAC Mort. Group, Inc.*, 298 Fed. Appx. 924, 925-26 (11th Cir. 2008) (citing *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-16 (11th Cir. 1993)).

Where, as here, the moving party meets its burden, the burden then shifts to the non-moving party to "demonstrate to the court the *existence* of a genuine issue of material fact." *Lendino v. Trans Union Credit Info. Co.*, 970 F.2d 1110, 1112 (2d Cir. 1992) (emphasis added). To meet this burden, the non-moving party "may not rest upon mere allegation or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Eberhardt v. Waters,* 901 F.2d 1578, 1580 (11th Cir. 1990) (internal quotation marks omitted). "A mere scintilla of evidence in support of the

nonmoving party will not suffice to overcome a motion for summary judgment." *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004), and the non-moving party must do "more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Further, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material fact*." *Anderson,* 477 U.S. at 247-48 (emphasis added). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* To determine a fact's *materiality*, "it is the substantive law's identification [here, the FLSA] of which facts are critical and which facts are irrelevant that governs." *Id.* at 248. Indeed, as Plaintiffs concede, "'whether a certain set of facts and circumstances constitute work for purposes of the FLSA is a *question of law*.'" (Dkt. 166 at 6 (quoting *Birdwell v. City of Gadsden*, 970 F.2d 802, 807 (11th Cir. 1992)) (emphasis in original). Thus, where, as here, "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial'" and summary judgment must be granted. *Matsushita Elec.*, 475 U.S. at 581.

As shown below, there is no genuine issue of *material* fact warranting a trial on any of the Named or opt-in Plaintiffs' individual claim of unpaid overtime.

## II. DURING THEIR UNPAID MEAL BREAK, PLAINTIFFS ARE NOT PERFORMING "WORK' WITHIN THE MEANING OF THE FAIR LABOR STANDARDS ACT.

### A. Under the FLSA, "Work" is Time Spent Predominantly for the Employer's Benefit.

As Plaintiffs rightly recognize, one primary issue presented here is whether Plaintiffs' unpaid meal break "constitutes work for purposes of the FLSA" and therefore may be compensable as overtime under the FLSA. (Dkt. 166 at 22 (quoting *Birdwell*, 970 F.2d at 807); 29 U.S.C. § 207(a).

The FLSA does not by its terms define "work", but the Supreme Court has. "Work" within the meaning of the FLSA is time spent "primarily for the benefit of the employer and his business." *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944); *see also, e.g., Dade Cty. v. Alvarez*, 124 F.3d 1380, 1384 (11th Cir. 1997), *cert. denied*, 523 U.S. 1122 (1998). As the Eleventh Circuit has put it:

> The question of whether the employees are working during this time for purposes of the FLSA depends on the degree to which the *employee may use the time for personal activities*. This question has been formulated as whether "the time is spent *predominately* for the employer's benefit or for the employee's."

*Birdwell*, 970 F.2d at 807 (emphasis added) (quoting *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944) (citation omitted)).

Thus, in determining whether a meal break is "work" within the meaning of the FLSA, the Courts of Appeal, including the Eleventh Circuit, unanimously look to see whether that time is spent "predominately" for the employee's or employer's benefit. *See, e.g., Roy v. County of Lexington,* 141 F.3d 533, 544 (4th Cir. 1998); *Bernard v. IBP, Inc.*, 154 F.3d 259, 264-65 (5th Cir. 1998); *Myracle v. Gen. Elec. Co.*, 33 F.3d 55, 1994

WL 456769 (6th Cir. 1994); *Alexander v. City of Chicago*, 994 F.2d 333, 337 (7th Cir. 1993), *cert. denied*, 520 U.S. 1228 (1997); *Henson v. Pulaski County Sheriff Dep't*, 6 F.3d 531, 534 (8th Cir. 1993); *Lamon v. City of Shawnee, Kansas*, 972 F.2d 1145, 1155 (10th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993); *Avery v. City of Talladega*, 24 F.3d 1337, 1345-46 (11th Cir. 1994); *see also, e.g., Haviland v. Catholic Health Initiatives-Iowa Corp.*, 729 F. Supp. 2d 1038, 1051-57 (S.D. Iowa 2010) (explaining Supreme Court precedent requires application of the "predominant benefit" standard; any "completely relieved from duty" test is improper and inconsistent with that Supreme Court precedent).[6]

Despite this directive from the Supreme Court – and the concomitant consensus among the Courts of Appeal – as to the definition of "work" for purposes of overtime compensation under the FLSA, Plaintiffs contend that the Eleventh Circuit *alone* applies a different standard for "meal break cases involving civilians." (Dkt. 166 at 7 n. 5.) Indeed, Plaintiffs would have this Court hold that, although it does not constitute "work" under the FLSA, Plaintiffs' meal break is nonetheless compensable under the FLSA.

Plaintiffs are wrong: There is no "civilian meal break" exception to the predominant benefit standard or the FLSA definition of "work."

Plaintiffs rely on a single 20-year-old Eleventh Circuit case, *Kohlheim v. Glynn Cty.*, 915 F.2d 1473 (11th Cir. 1990), to support their assertion that a "completely relieved of duty" test applies to a "civilian meal break." Examination of *Kohlheim*, however,

---

[6] As the Eleventh Circuit has stated, to "be construed as work time for purposes of the FLSA," the employer must "severely restrict" the employee's use of the time. *Birdwell*, 970 F.2d at 810 (holding employees "on-call" time "was not so severely restricted" that it could not be "used predominantly for [employees] benefit").

reveals that the Eleventh Circuit did *not* disregard the Supreme Court's definition of "work" and apply some "completely relieved of duty" test applicable to a "civilian meal break."[7]

First, in *Kohlheim*, the Court identified the test to be applied "in meal period cases": "what matters in meal period cases is whether the employees are subject to *real limitations* on their personal freedom which inure to the *benefit of the employer*." 915 F. 2d at 1477 n. 19. This is the same inquiry the Eleventh Circuit used in applying the predominant benefit standard in *Birdwell* when it stated that the employer must "severely restrict" the employee's use of the time to constitute "work."[8] *Birdwell*, 970 F.2d at 810.

Second, the FLSA claimants in *Kohlheim* were firefighters included in the same "public agency" exemption, 29 U.S.C. § 207(k), at issue in *Avery, supra*, and applicable to the law enforcement employees there. *Kohlheim*, 915 F.2d at 1476 ("29 U.S.C. § 207(k) contains special requirements applicable only to public policemen and firefighters"); *Avery*, 24 F.3d at 1345-46. Plaintiffs admit that the Eleventh Circuit in *Avery* applied the "predominant benefit" test in determining the employees' meal break was *not* compensable under the FLSA. (Dkt. 166 at 7 n. 5); *Avery*, 24 F.3d at 1347.[9]

---

[7] Plaintiffs also rely upon a Department of Labor interpretive bulletin, 29 C.F.R. § 719.85(a). This "interpretative bulletin" is not binding on the courts, as even the Department of Labor expressly recognizes that "interpretations of the [FLSA] are made by the courts." 29 C.F.R. § 785.2(a).

[8] Although the Court in *Chao v. Tyson Foods, Inc.*, 568 F. Supp. 2d 1300, 1307 n. 4 (N.D. Ala. 2008), erroneously suggested that *Kohlheim* applied a test other than the "predominant benefit" standard, it noted that due to decisions in the last 20 years it "would be unsurprised if the Eleventh Circuit is also persuaded to reject that standard in favor of the predominant benefit standard." *See also* pp. 15-16 *infra*.

[9] Apparently Plaintiffs contend that the "public agency" exemption applicable only to "fire protection or law enforcement activities" is applied in two separate ways, one for fire protection, the other for law enforcement. To simply state Plaintiffs' contention is to demonstrate its fallacy.

Third, "law enforcement" employees have the same FLSA rights to overtime granted to civilians (indeed all workers in interstate commerce) by 29 U.S.C. 207(a). There is not a separate definition of work for law enforcement. To adopt some "civilian meal time" exception would mean that law enforcement employees have fewer rights than civilians under the FLSA. In sum, Plaintiffs must show that time they claim for overtime was spent predominately for FPL's benefit.

**B. Plaintiffs' Meal Break is Not "Work".**

As noted above, Plaintiffs claim their meal break is "work" based on two asserted items: each Plaintiff a) "could not leave the truck or job site to go anywhere" (*see* Dkt. 166 at 11); and b) was "required to monitor" an FPL-issued radio. (*See* Dkt. 166 at 11-12.) Plaintiffs' testimony alone demonstrates there is no genuine dispute that neither of these purported "facts" is true.

The evidence of record uniformly demonstrates that during their meal break Plaintiffs *can* "leave the truck or job site." Plaintiff Sala testified that, among other things, he could go to a park during the meal break to eat his meal. Sala Dep. at 52-54. Mr. Connors testified that in every instance requested, authorization was received to go to a restaurant to pick up a meal. Connors Dep. at 96, 133. These are among the many activities in which each Plaintiff may engage, including reading, having lunch with her/his spouse, making personal phone calls, surfing the Internet, resting, even sleeping. Leitten Decl. ¶ 6; Sala Dep. at 52-54; Connors Dep. at 79-82; Murphy Dep. at 75-77; Grant Dep. at 87.

Further, there is no evidence that each of the Named and opt-in Plaintiffs was required to listen to an FPL radio during the meal break. Only the person-in-charge is

expected to listen to an FPL-issued radio during a meal break in case of an FPL or crew member family emergency. Suarez Dep. at 22-28, 113-15; Grant Dep. at 70; Murphy Dep. at 46, 70. And Plaintiffs have failed to offer admissible evidence that each of the Named and opt-in Plaintiffs was ever a person-in-charge. This failure is hardly surprising in light of Plaintiff Murphy's admission that he was *never* a person-in-charge. Murphy Dep. at 70.

Even if either of these purported facts was true – and neither is – Plaintiffs' meal break would still not constitute "work" under the FLSA. Indeed, Plaintiffs have already conceded that "being 'on-call' or being required to remain at the employer's work site are not enough to constitute 'work' in the eyes of [the] FLSA." (Dkt. 18 at 4.) Moreover, the cases are legion holding that a meal break is not compensable even though the employees are required to be on call[10] and "restricted in their movement."[11] The court's decision in *Bridges v. Amoco Polymers, Inc.*, 19 F. Supp. 2d 1375, 1379 (S.D. Ga. 1997) is particularly instructive in this regard. In granting the employer summary judgment on the employee's FLSA claim, the court stated:

> Here, while the Plaintiff is *subject to being recalled from her meal break*, she does not have any significant responsibilities and is not severely restricted. She is not required to stay at her duty station and *can eat anywhere at the plant*, but must inform her supervisor where she will be. . . . Even if Plaintiff had presented evidence that interruptions did in fact

---

[10] It is well settled that where, as here, the employer has not "severely restricted" the employee's time, "on call" time is not compensable work under the FLSA. *Birdwell*, 970 F.2d at 810; *Nicholas v. Bright House Networks, LLC*, No. 6:05-CV-1865-ORL-31KRS, 2007 WL 187810, at *3 (M.D. Fla. Jan. 22, 2007). Indeed, this rule has specifically been applied to hourly employees of an electric utility, such as FPL. *Boehm v. Kansas City Power & Light Co.*, 868 F.2d 1182, 1185 (10th Cir. 1989).

[11] Simply because an employee is required during his or her meal break to remain at the employer's plant or job site does not make the meal break "work" within the meaning of the FLSA. *See, e.g., Brown v. Howard Indus., Inc.*, 116 F. Supp. 2d 764, 766-67 (S.D. Miss. 2000) (granting motion to dismiss and citing, *inter alia*, *Avery v. City of Talladega*, 24 F.3d 1337 (11th Cir. 1994)).

> occur frequently, which she did not, those interruptions would not rise to the level of significant responsibilities or severe restrictions making her uninterrupted meals compensable. [Emphasis added.]

In *Avery* the Eleventh Circuit affirmed summary judgment for the employer. There, the employees were required to "leave their radios on" and were "restricted in their movement," but were otherwise "free to spend their meal breaks in any way they wish" just as Plaintiffs are here. 24 F.3d at 1347; *accord, e.g., Arrington v. City of Macon*, 986 F. Supp. 1474, 1480 (M.D. Ga. 1997) (granting employer's motion for partial summary judgment where employees were "subject to immediate call" and could only go to places established by the employer's procedures"); *Myracle, supra*, 33 F.3d 55, 1994 WL 456769 at *2, 5 (affirming judgment in favor of employer where plaintiffs, although sometimes interrupted by an emergency, were free to choose the time of their meal period); *O'Hara v. Menino*, 253 F. Supp. 2d 147, 151 (D. Mass. 2003) (granting employer summary judgment where employee "remains available to receive emergency radio calls at all times"); *Agner v. United States*, 8 Cl. Ct. 635, 636 (1985) (granting employer summary judgment where employees were required to remain on the employer's premises, have their radios on, and answer any calls from supervisors), *aff'd*, 795 F.2d 1017 (Fed. Cir. 1986).[12]

Even were this Court to adopt some "civilian meal break exception" subject to a "completely relieved of duty" test, Plaintiffs' meal break would still not constitute "work." In *Chao*, relied on by Plaintiffs (Motion at 7), the court held that the FLSA

---

[12] Plaintiffs may not take any comfort from *Hoffman v. St. Joseph's Hospital*, No. 1:97-CV-0753-RLV, 1998 WL 283540 (N.D. Ga. April 14, 1998). The *Hoffman* court misconstrued Eleventh Circuit precedent as set forth, *inter alia*, in *Birdwell*, *Avery*, and *Kohlheim*. The *Bridges* court, on the other hand, accurately analyzed, synthesized, and applied this precedent to reach the proper result it did.

claimants' meal break was *not* compensable and granted the defendant's motion for partial summary judgment. 568 F. Supp. 2d at 1310. During their meal break, the *Chao* plaintiffs were required to perform the following duties: "doff their protective outerwear at the beginning of the meal period, wash and sanitize their equipment, then don the equipment again at the end of the break." Nonetheless, the Court found: "The employees are 'completely relieved from duty' as that standard is applied in this circuit, thereby satisfying the requirements of a 'bona fide meal period' under § 785.19." *Id.*

The Court explained the difference between these duties and those in *Kohlheim*. The *Chao* court stated:

> In *Kohlheim*, the court found that firefighters retained "significant affirmative responsibilities" during their meal periods, because they were expected to remain at their work stations, subject to emergency calls, while they ate their meals. As the *Bridges* court noted, such duties constitute "the bulk of a fireman's job."
>
> Similar to the court's observation in *Bridges*, however, "a plant worker's job is to *work* at their station." During the second meal period at issue here, the employees are not suffered to work at their stations, or perform any other "significant affirmative responsibilities" which are even remotely analogous to their on-duty tasks.

568 F. Supp. 2d at 1310 (emphasis in original; citations omitted).

As in *Chao*, Plaintiffs here are not required to "work at their stations, or perform any other 'significant affirmative responsibilities' which are even remotely analogous to their on-duty tasks," which Plaintiff Romero stated are "to perform repair or other physical/manual work to the power distribution system." (Dkt. 48, Ex. A at 2, ¶ 5). Therefore, Plaintiffs, like the claimants in *Chao*, are "completely relieved of duty."

In sum, Plaintiffs do not work during their meal break and therefore FPL is entitled to summary judgment against each Named and opt-in Plaintiff.

## III. PLAINTIFFS HAVE FAILED TO PRODUCE EVIDENCE THAT FPL OWES EACH AND EVERY NAMED AND OPT-IN PLAINTIFF OVERTIME COMPENSATION.

Congress enacted the Fair Labor Standards Act ("FLSA") in 1938 to ensure that workers receive "a fair day's pay for a fair day's work."[13] *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 578 (1942). Through the FLSA, Congress sought to protect workers from two factors: "the evil of 'overwork' as well as 'underpay.'" *Id.* Thus, it is well-settled that, where, as here, a worker's collective bargaining agreement ensures payment above the FLSA minimum wage, a worker's sole FLSA claim can relate *only* to unpaid "overtime" as defined by the FLSA, that is, unpaid hours worked in excess of 40 in a specific workweek. 29 U.S.C. 207(a); *Conzo v. City of New York*, 667 F. Supp. 2d 279, 284 (S.D.N.Y 2009) (It is well-settled that the "overtime requirements of the FLSA do not apply until an employee has worked in excess of the statutory overtime requirement of 40 hours per week"). Indeed, Plaintiffs concede that their claim here is limited to "overtime wages" under the FLSA. (Dkt. 166 at 2); Complaint ¶¶ 9-10, 15-16.

"An employee who brings suit for unpaid overtime compensation under the FLSA bears the burden of proving, with *definite and certain evidence*, that he performed work for which he was not compensated properly." *Hesseltine v. Goodyear Tire & Rubber Co.*, 391 F. Supp. 2d 509, 516 (E.D. Tex. 2005) (emphasis added) (citing, *inter alia*, *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946)); *see also, e.g.*, *Allen v. Board of Public Education*, 495 F.3d 1306, 1315 (11th Cir. 2007) ("a FLSA Plaintiff bears the burden of proving that he or she worked overtime without compensation");

[13] In light of the amounts they receive from FPL in accordance with the CBA, *see* p. 3 *supra*, Plaintiffs cannot complain that they do not receive a "fair day's pay."

*Woods v. AHF/Central States, Inc.*, No. 3:10-cv-0065, 2011 WL 336382, at * 4 (M.D. Tenn. Jan. 31, 2011).

In determining whether a worker has been properly compensated, the FLSA expressly provides the employer with three categories of "credits" which are applied against any unpaid "overtime wages." 29 U.S.C. § 207(e)(5)-(7), (h)(2). "The statute identifies three categories of creditable premium pay: (1) compensation for excess hours, § 207(e)(5), (2) compensation for weekend and holiday work, § 207(e)(6), and (3) compensation pursuant to an agreement, § 207(e)(7)." *Dice v. Weiser Security Servs.*, No. 06-61133-CIV, 2008 WL 269513, at *4 (S.D. Fla. Jan. 29, 2008). Further, the Eleventh Circuit "permits an employer to credit ***accumulated premium pay*** against incurred overtime. *See Kohlheim v. Glyn County,* 915 F.2d 1473, 1481 (11th Cir.1990) (holding that employer was 'allowed to offset all previously paid overtime premiums')." *Dice*, *supra*, at *4 (emphasis added); *accord*, *e.g.*, *Murphy v. Town of Natick*, 516 F. Supp. 2d 153, 160-61 (D. Mass. 2007).

An employee's right of action under the FLSA for unpaid overtime is set forth in 29 U.S.C. § 216(b). That statute states that an employer will be "*liable* to the employee or employees" only if the employer "violates the provisions of . . . section 207 of this title." (Emphasis added.) As set forth above, Section 207 includes in subsections (e)(5)-(7) employer credits for "premium payments" to the plaintiff/employee. Therefore, to establish liability under the FLSA, each Named and opt-in Plaintiff is required to show through "definite and certain evidence" he/she has worked overtime hours[14] for which he

[14] It is well-settled an employee cannot recover if the period of overtime worked on a given day is "*de minimis*". *See, e.g., Burton v. Hillsborough Cty.*, 181 Fed Appx. 829 (11th Cir.), *cert. denied*, 549 U.S.

has not been properly compensated *after crediting FPL with all "premium payments" the respective Plaintiff has received*.[15]

Here, there is no evidence that (a) each Named and opt-in Plaintiff worked more than 40 hours in a specific week (even counting their unpaid meal breaks as "work") or (b) that the claimed compensation for all such hours as to a particular Named or opt-in Plaintiff ***is more than the premium compensation that Plaintiff received from FPL***.

The lack of admissible evidence in this regard is not surprising. Review of a sample of the Plaintiffs' time records shows that Plaintiffs received ***more compensation (due to premium compensation) from FPL than the FLSA requires***. For example, during the four workweeks between December 29, 2007 and January 25, 2008, Plaintiff Sala worked less than 40 hours in three of the four weeks (even if his unpaid meal breaks are counted as "work".) During these three weeks, Mr. Sala received 3.5 hours of premium wages pursuant to the CBA. These 3.5 hours exceed any claim for unpaid meal breaks during the one week in which Mr. Sala worked more than 40 hours. Sala Dep. at 94-142 & Ex. 13 (Dkt. 172-1 at 2-58).

Because there is no admissible evidence that FPL owes each individual Named and opt-in Plaintiff overtime compensation, after crediting all premium compensation

---

1019 (2006) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946), *superseded by statute on other grounds as stated in Carter v. Panama Canal Co.*, 463 F.2d 1289, 1293 (D.C.Cir.1972)). Thus, Plaintiffs here may not be heard to complain that they have been required to respond during a meal break for a minute or two to a radio inquiry but have not received overtime compensation for such *de minimis* time.

[15] None of the cases cited in Plaintiffs' Reply (Dkt. 179) is to the contrary, or even suggests that accounting for employer credits for premium payments is not part of establishing an employer's liability. Indeed, in *Lupien v. City of Marlborough*, 387 F.3d 83, 89 (1st Cir. 2004), the court stated that an employer's "*liability under the FLSA* could be offset by" employer credits. (Emphasis added.) Moreover, many of the cases cited in Plaintiffs' Reply do not address premium payments identified in 29 U.S.C. § 207(e)(5)-(7). *E.g., Roman v. Maietta Const., Inc.*, 147 F.3d 71, 76-77 (1st Cir. 1998).

paid the respective Plaintiff, FPL is entitled to summary judgment against each Named and opt-in Plaintiff.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 3.01(j) for the District Court for the Middle District of Florida, FPL respectfully requests that oral argument be heard on the Motion. Counsel estimates that a hearing on the Motion would require a total of 30 minutes.

## CONCLUSION

For all the foregoing reasons, FPL's Motion should be GRANTED and summary judgment entered in favor of FPL and against each Named and opt-in Plaintiff. *See* Federal Rule of Civil Procedure 56(f)(1).

Dated: February 11, 2011

Respectfully submitted,

Ellen S. Malasky
Florida Bar No. 724599
Florida Power & Light Company
700 Universe Boulevard
Juno Beach, FL 33408
Telephone: (561) 691-7321
Facsimile: (561) 691-7103
ellen.malasky@fpl.com

Gary K. Harris
**Trial Counsel**
Florida Bar No. 0065358
gharris@bsfllp.com
Karen C. Dyer
Florida Bar No. 716324
kdyer@bsfllp.com
Boies, Schiller & Flexner LLP
121 South Orange Avenue, Suite 840
Orlando, FL 32801
Telephone: (407) 425-7118
Facsimile: (407) 425-7047

*Attorneys for Defendant Florida Power & Light Company*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 11th day of February, 2011, I electronically filed the foregoing Defendant Florida Power & Light Company's Motion for Summary Judgment with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to Mauricio Arcadier, Arcadier & Associates, P.A., Suite 304, 2815 W. New Haven Avenue, Melbourne, Florida 32904, and Gregg I. Shavitz and Keith M. Stern, Shavitz Law Group, P.A., 1515 S. Federal Highway, Suite 404, Boca Raton, FL 33432.

s/ Gary K. Harris
Gary K. Harris