UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MARCOS ROMERO, *et al.*,

    Plaintiffs,

v.                                            Case No. 6:09-cv-1401-Orl-36GJK

FLORIDA POWER & LIGHT COMPANY,

    Defendant.
_____/

**ORDER**

This cause comes before the Court on Plaintiffs' MARCOS ROMERO, ALBERT SALA, JAMES KNAPP, STEPHEN PRATT, LARRY BRYAN, JAMES HARTWELL, JOHN RITTER, JACK MURPHY, and THOMAS CONNORS ("Plaintiffs") Corrected Renewed Motion for Representative Testimony at Trial on the Issue of Liability ("Motion for Representative Testimony")(Doc. 225) and Corrected Renewed Motion for Bifurcation of Trial on the Issues of Liability and Damages ("Motion for Bifurcation")(Doc. 224). Defendant Florida Power & Light Company ("Defendant" or "FPL") filed Memoranda in Opposition to the Motion for Representative Testimony and the Motion for Bifurcation (Docs. 226, 227). The Court finds that oral argument is not required on this matter. Upon consideration of the parties' submissions, case law, and the record in this case, the Court will grant Plaintiffs' Motion for Representative Testimony and Motion for Bifurcation.

**I.   Background**

Plaintiffs bring this action under the Fair Labor Standards Act ("FLSA."), 29 U.S.C. §§ 201 *et seq.*, on behalf of themselves and others similarly situated. Plaintiffs allege that their employer, FPL, failed to pay them overtime wages for work over 40 hours per week. (Doc. 1 ¶¶

13-21). Specifically, Plaintiffs seek overtime compensation for work performed during the meal period.[1] (*Id.* ¶¶ 17-18; Doc. 166). On October 14, 2010, this Court granted Plaintiffs' Motion to Authorize Notice to Potential Class Members and conditionally certified the following class as a collective action:

> All hourly paid, first shift senior line specialists, line specialists, cable splicers, and groundsmen, who worked an eight and half hour shift, for Florida Power & Light Company (FPL), in FPL's Distribution Business Unit since July 21, 2007 who were required to monitor and/or respond to their portable or truck radios during the meal period and/or were restricted during their meal period from the free use of the meal period, and yet were not compensated for all of their overtime hours worked due to the deduction of thirty (30) minutes from their pay for such time.

(Doc.159, p. 2). On February 22, 2012, the Court denied Defendant's Motion for Decertification (Doc. 196), finding that named Plaintiffs, opt-in Plaintiffs, and members of the conditionally certified class were similarly situated for the purposes of an FLSA collective action (Doc. 212). As motions for summary judgment have been denied (Doc. 207),[2] this case will proceed to trial as a collective action on behalf of the named and opt-In Plaintiffs.

Plaintiffs first filed a Motion for Representative Testimony on the Issue of Liability and a Motion to Bifurcate Trial on the Issues of Liability and Damages on July 25, 2011 (Docs. 201, 200), and then filed Renewed Motions following the Court's denial of Defendant's Motion for Decertification, on March 21, 2012 (Docs. 221, 222). Plaintiffs noticed a Corrected Renewed Motion for Representative Testimony on April 3, 2012 (Doc. 225), adjusting the current

---

[1] Plaintiffs use "radio-monitoring policy" as shorthand for "Defendant's requirement for similarly situated workers to monitor and/or respond to their portable or truck radios during the meal period and/or restrictions during their meal period from the free use of the meal period while not being compensated for all of their overtime hours worked due to the deduction of purported meal breaks from their pay." Doc. 225, p.1.

[2] In denying both parties' Motions for Summary Judgment, the Court found the following disputed issues of material fact: whether FPL's alleged radio-monitoring policy during meal breaks applies to all employees or only "persons-in-charge", what constitutes a "person-in-charge", and whether the Plaintiffs engage in "significant affirmative responsibilities" during the meal period for which they are not compensated. Doc. 207, pp. 4-12.

calculation of opt-in Plaintiffs down to 370.[3]  Similarly, Plaintiffs noticed a Corrected Renewed Motion for Bifurcation of Trial on the Issues of Liability and Damages on April 3, 2012 (Doc. 224).

## II.   Standard

### A. Overtime compensation under the FLSA

Plaintiffs' claims in this action are for "overtime wages" under the FLSA (Doc. 1 ¶¶9-10, 15-16).  Pursuant to 29 U.S.C. §207(a)[4], the FLSA requires compensation at one and a half times the regular rate when employers cause their employees to work more than forty hours a week.  An employee suing under FLSA § 16(b) for unpaid minimum wages or unpaid overtime compensation has the burden of proving that he or she performed work for which he was not properly compensated.  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946). The Supreme Court emphasizes that "[t]he remedial nature of this statute and the great public policy which it embodies, however, militate against making that burden an impossible hurdle for the employee." *Id.*, p.687.

### B. The Court's discretion to bifurcate a trial

Federal Rule of Civil Procedure 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims."  Fed.R.Civ.P. 42(b).

---

[3] In their Corrected Renewed Motion for Representative Testimony, Plaintiffs note that they continue to work with Defendant to ascertain the exact number of opt-in Plaintiffs, which may vary slightly "due to duplication or other reasons." Doc. 225, p.2, n.1.

[4] The relevant part provides that "no employer shall employ any of his employees who in any workweek is engaged in commerce of in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. §207(a)(1).

Rule 42(b) "confers broad discretion on the district court in this area," permitting bifurcation under many circumstances, including in furtherance of convenience. *Medtronic Xomed., Inc. v. Gyrus ENT LLC*, 440 F. Supp.2d 1333, 1335 (M.D. Fla. 2006). The Eleventh Circuit also recognizes the broad discretion afforded a district judge to bifurcate a trial in order to promote convenience and efficiency. *Harrington v. Cleburne County Board of Education*, 251 F.3d 935, 938 (11th Cir. 2011); *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1301 (11th Cir. 2001) (Rule 42(b) "affords a district court discretion to order separate trials where such order would further convenience, avoid prejudice, or promote efficiency."). When moving to bifurcate an action into separate trials for liability and damages, the plaintiff should "demonstrate that the particular facts and circumstances of th[e] case justify bifurcation." *Dzafic v. Geovera Specialty Ins. Co.*, 2008 WL 3874602, *1 (M.D. Fla. 2008).

**III.   Analysis**

    **A. Precedent for the use of representative testimony in an FLSA collection action**

The parties have vastly different interpretations, even of the very same case law, regarding the precedential support for the use of representative testimony in an FLSA collective action. Plaintiffs cite the Supreme Court's decision in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) for the proposition that all plaintiffs need not testify in an FLSA collective action (Doc. 225, p.4). Whereas Defendant maintains that the decision merely lessens the evidentiary burden to prove damages when a Defendant employer has failed to keep adequate time records (Doc. 226, p. 11). The *Anderson* court explains that when a defendant employer fails to maintain proper records, employees must produce only sufficient evidence to show the amount of uncompensated work "as a matter of just and reasonable inference." *Anderson*, 328 U.S. at 687. If the employer fails to produce evidence to the contrary, or of the precise amount

4

of work that the employee performed, then the court can award damages even when they are approximate. *Id.*

Although Defendant is correct that *Anderson* focuses on the reduced evidentiary burden for proving damages in certain instances and never uses the term "representative testimony", subsequent courts have interpreted *Anderson* to authorize some employees to testify about a defendant's FLSA liability so that non-testifying plaintiffs can show the same by inference. *See Reich v. Southern Maryland Hosp., Inc.*, 43 F.3d 949, 951 (4th Cir. 1995) ("Under *Mt. Clemens*, the Secretary can present testimony from representative employees as part of his proof of the prima facie case."); *Donavan v. Bel-Loc Diner, Inc.*, 780 F.2d 1113, 1116 (4th Cir. 1995) ("There is no requirement that to establish a *Mt. Clemens* pattern or practice, testimony must refer to all non-testifying employees. Such a requirement would thwart the purposes of the sort of representational testimony clearly contemplated by *Mt. Clemens*."); *Sec'y of Labor v. DeSisto*, 929 F.2d 789, 792 (1st Cir. 1991) ("the Secretary can rely on testimony and evidence from representative employees to meet the initial burden of proof requirement."); *McLaughlin v. Ho Fat Seto*, 850 F.2d 586, 589 (9th Cir. 1988) ("We hold that the *Mt. Clemens Pottery* standard allows district courts to award back wages under the FLSA to non-testifying employees based upon the fairly representative testimony of other employees.").

In an attempt to discredit the precedential support for representative testimony, Defendant notes that some cases cited by Plaintiffs are enforcement actions brought by the Secretary of Labor under section §216(c) of the FLSA rather than collective actions pursuant to §216(b), and alleges that the courts cited actually rejected the trial court's reliance on the representative testimony (Doc. 226, p.12, n.10). First, the Court sees no reason why the burden of a *prima facie* case of liability against a defendant would differ in an enforcement action versus a collective

5

action, and Defendant has cited no such authority explaining why the distinction is relevant. Second, the Defendant's claim that the courts rejected representative testimony in *Reich* and *Desisto* is incorrect. The *Reich* court explicitly states that it "[is] untroubled by the quantum of representational evidence in this case because the testimony covered each clearly defined category of worker; there was actual consistency among these workers' testimony; both within each category and overall." *Reich*, 121 F.3d at 68. Far from "rejecting" reliance on representative testimony, the *Desisto* court similarly explains that "[w]here the employees fall into several job categories, it seems to us that, at a minimum, the testimony of a representative employee from, or a person with first-hand knowledge of, each of the categories is essential to support a back pay award." *Desisto*, 929 F.2d at 793. Defendant also cites a Sixth Circuit decision limiting *Anderson* to permitting representative testimony for damages, but not reducing the standard of proof that an FLSA violation occurred. *O'Brien v. Ed Donnelly Enter., Inc.*, 575 F.3d 567, 602-03 (6th Cir. 2009). *Anderson*, which specifically permits inferential representative testimony for damages when an employer's record keeping is imperfect, is not irrelevant to this action as Defendant contends, nor does it provide blanket approval for the use of representative testimony to show liability under the FLSA.

Second, the parties drastically differ in interpreting the relevant portions of the Eleventh Circuit's decision in *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233 (11th Cir. 2008). Whereas Plaintiffs argue that *Morgan* strongly supports the use of representative testimony to show liability in an FLSA collective action, Doc. 225, p.4, Defendant interprets a single footnote stating how plaintiffs met their *prima facie* case in *Morgan* as negating the possibility of using representative testimony in FLSA collective actions. Doc. 226, p.15. In fact, addressing Family Dollar's argument that the number of testifying plaintiffs was "too small a sample size", the

Eleventh Circuit simply states that plaintiffs did not use representative testimony.[5] *Morgan*, 551 F.2d at 1277. Rather, "[t]o establish its prima facie case, Plaintiffs demonstrated that: (1) Family Dollar employed them; (2) Family Dollar is an enterprise engaged in interstate commerce covered by the FLSA; (3) each Plaintiff actually worked in excess of a 40-hour workweek; and (4) Family Dollar did not pay any overtime wages to them."[6] *Id.*, at 1277, n.68. From this footnote, Defendant infers that because the *Morgan* plaintiffs did not use representative testimony to show liability, in any FLSA collective action every plaintiff must demonstrate that *each* actually worked in excess of a 40-hour workweek. The Court is not persuaded by Defendant's interpretation of *Morgan* as applied to this case. To the contrary, the *Morgan* court discusses the Supreme Court's implicit support in *Anderson* for the use of representative testimony in FLSA collection actions, finding that "if anything, the *Mt. Clemens* line of cases affirms the general rule that not all employees have to testify to prove overtime violations." *Morgan*, 551 F.3d at 1279. Moreover, cases citing *Morgan* do not bar representative testimony for showing FLSA liability. *See King v. CVS/Caremark Corp.,* No. 07-21824-CIV, 2008 WL 5973490 (S.D. Fla. 2008).[7]

---

[5] Plaintiffs argue further that the *Morgan* court implicitly supports the use of representative testimony to show liability by not repudiating the testimony of 1% of the 1424 plaintiffs in that case and simply explaining that representative testimony was not used to establish a *prima facie* case. *See* Doc. 225, pp.4-5.

[6] The Eleventh Circuit also notes that plaintiffs do not bear the burden of proving defendant Family Dollar's executive exemption defense and as such, cannot rely on plaintiff's insufficient number of witnesses to prove their defense. *Morgan*, 551 F.2d at 1278. Contrary to Defendant's characterization of this point, *see* Doc. 226, p.14, the use of representative testimony to prove Defendant's affirmative defenses, if any, is not in issue.

[7] Defendant's citation to *King* as recognizing "representative testimony not 'appropriate'" mischaracterizes the decision (Doc. 226, p.9). In *King*, plaintiffs address the procedural concerns in the context of certification of an FLSA class action by offering the possibility of representative testimony. *King v. CVS/Caremark Corp.*, 2008 WL 5973490, *6 (S.D. Fla 2008). Acknowledging that "[c]ourts have allowed the use of representative testimony under various circumstances", the court finds it would not be appropriate in this particular action. *Id.*

Third, the parties dispute the relevance of the Supreme Court's recent decision in disapproving of the use of representative evidence to prove an absent class member's claim in a traditional Rule 23 class action. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011). Plaintiffs argue that the scope of the decision is substantively limited to Title VII employment discrimination claims, and procedurally limited to class actions brought pursuant to Federal Rule of Civil Procedure 23. Doc. 225, pp. 10-11. Defendant cites no support for its conclusory statement that *Dukes* "is applicable to FLSA collective actions." Doc. 226, p.15. The Court finds Plaintiffs' arguments for the inapplicability of *Dukes* to the present case persuasive. First, the individual equitable remedies that would be available under Title VII, such as employee reinstatement, are not available in an FLSA action. Second, from a procedural standpoint, a Rule 23 class action has differing standards for certification and potentially binds absent class members, whereas the FLSA collective action affects an identified group of similarly situated workers who have opted into the case. The Court is satisfied that *Dukes* cannot fairly be interpreted to foreclose the use of representative testimony in FLSA collective actions.

### B. Representative testimony is appropriate for evaluating FPL's meal-break policy

#### i. *Courts routinely use representative testimony in FLSA actions*

The Court is satisfied that representative testimony on the issue of Defendant's radio-monitoring policy is supported by case law and appropriate to efficiently avoid cumulative testimony. Plaintiffs argue that regardless of whether each named and opt-in Plaintiff had to respond to or monitor radios in a particular week resulting in their individual overtime compensation, an issue for damages assessment, the contours of Defendant's radio-monitoring policy and whether it violates the FLSA can be determined through representative testimony. Doc. 225, pp.7-9. Courts routinely approve the use of representative testimony in FLSA cases.

*See, e.g. Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 472 (11th Cir. 1982) (holding in an off-the-clock FLSA case that "it is clear that each employee need not testify in order to make out a prima facie case of the number of hours worked as a matter of 'just and reasonable inference'"); *Grochowski v. Phoenix Construction*, 318 F.3d 80, 88 (2d Cir. 2003) (although "not all employees need testify in order to prove FLSA violations or recoup back-wages, the plaintiffs must present sufficient evidence for the jury to make a reasonable inference as to the number of hours worked by non-testifying employees."); *Reich v. Southern New England Telecomm. Corp.*, 121 F.3d 58, 67 (2d. Cir. 1997) ("it is well-established that the Secretary may present the testimony of a representative sample of employees as part of his proof of the prima facie case under the FLSA.").

### ii. *Judicial efficiency favors using representative testimony on issue of liability*

In addition to case law supporting the use of representative testimony, the Court is persuaded that judicial economy and efficiency favor its use for the issue of liability regarding Defendant's radio-monitoring policy. Indeed, the evidence from the named Plaintiffs and approximately three hundred opt-in Plaintiffs would be cumulative, even if, as Defendant argues, there are differences in the application of the company-wide policy. Doc. 226, p.11. Defendant argues that Plaintiffs have failed to specify how the "multitude of variables presented by more than 300 individual claims," such as their differing work locations, levels of seniority, and experiences receiving radio calls during lunch break, can be addressed through representative testimony.[8] Doc. 226, p.11. The fundamental principle underlying representative testimony, however, is that all meaningful differences among class members can be addressed through a

---

[8] Defendant's hypothetical, allegedly demonstrating the impropriety of representative testimony, Doc. 226, p.10, indeed demonstrates the exact variation between class members that needs to be presented in Plaintiffs' election of representative plaintiffs to testify at trial.

9

representative group. Doc. 225, p.9; *Nelson v. American Standards, Inc.*, 2009 WL 4730166, *3 (E.D. Tex. 2009)(approving representative discovery in an FLSA class action, stating "there is no reason that all defenses and alleged differences among class members cannot be ascertained and articulated based on [representative discovery]"). The Court agrees that Plaintiffs will have to select representative plaintiffs from several different categories and subdivisions. *See Desisto*, 929 F.2d at 793 ("[w]here the employees fall into several job categories, it seems to us that, at a minimum, the testimony of a representative employee from, or a person with first-hand knowledge of, each of the categories is essential to support a back pay award.").

Although Defendant claims that Plaintiffs' plan lacks detail on how representative testimony will work to show Defendant's liability, it focuses its opposition on a reading of the case law, particularly *Morgan*, which would require each plaintiff in an FLSA collective action to testify in order to establish a *prima facie* case. Doc. 226, p. 8-10.; *Morgan*, 551 F.2d at 1277, n.68. As discussed, the Court is not persuaded by Defendant's interpretation of *Morgan* as requiring each Plaintiff testify in an FLSA collective action in order to prove Defendant's liability for a company-wide policy.[9]

### C. Bifurcation of the trial on the issues of liability and damages will promote convenience and efficiency

Having approved the use of representative testimony for the issue of FPL's liability for its radio-monitoring policy, the Court finds that bifurcation of the issues of liability and damages is efficient and convenient. *See* F.R.Civ.P. 42(b). Defendant's Opposition to Plaintiffs' Motion for Bifurcation primarily reiterates its argument for why representative testimony to determine FPL's liability is unwarranted. *See* Doc. 227, pp. 9-10. Indeed, Defendant acknowledges that

---

[9] Indeed, in order to accurately assess Defendant's damages, should the Plaintiffs prove Defendant's liability under the FLSA, each plaintiff would have a burden of demonstrating his or her applicable damages.

10

"[e]xamination of Plaintiffs' two motions makes clear that granting either is appropriate only if the Court grants both." Doc. 26, p.2, n.2. There is sufficiently generalized evidence regarding Defendant's liability for its radio-monitoring policy such that representative testimony is appropriate, whereas the evidence regarding damages will be more individualized. *See, e.g. Reich v. Dept. of Conserv. and Nat'l Resources*, 28 F.3d 1076, 1078 (11th Cir. 1994) (noting that the district court bifurcated the issues of liability and damages in an FLSA action brought by the Secretary of Labor); *Falcon v. Starbucks Corp.*, 580 F.Supp. 2d 528, 541 (S.D. Tex. 2008) ("the Court is willing to consider bifurcating the liability and damages stage of the trial if it will be in the interest of judicial economy").

### *i. Bifurcation of the trial into liability and damages parts promotes convenience and efficiency*

The Court previously found that "[a]ll conditionally certified Plaintiffs were subject to Defendant's common, uniform policy resulting in meal-break overtime claims which, along with the strong judicial efficiency and procedural fairness concerns, weigh in favor of proceeding as a collective action pursuant to 29 U.S.C. § 216(b)." Doc. 212, p.10. Unlike liability, where compensability for meal periods given FPL's radio-monitoring policy can be determined through representative testimony, the extent of damages owed Plaintiffs, if any, must be addressed on an individual basis. First, the resolution of the liability stage separately may "obviate, narrow, or allow resolution of the amount of damages, if any, for the hundreds of class members, saving scarce trial time." Doc. 224, p.9, n.5. Second, many of the alleged defenses to liability that Defendant has raised, such as premium pay credits, whether a particular Plaintiff was a "person-in-charge", specific workweeks without overtime hours, days without meal break deductions due to FPL's policy of not deducting when plaintiffs received "trouble calls" during the meal break, in fact relate to the calculation of each individual Plaintiff's damages. *See* Doc. 227, pp. 10-12;

11

Doc. 224, p.9. Courts have found bifurcation of a trial between liability and damages warranted in FLSA collective actions, and specifically that defenses to an individual plaintiff's overtime claims, such as failure to record a missed lunch, do not overcome the generalized inquiry of whether a defendant's policy violated the FLSA. *See, e.g. Reich v. Dept. of Conserv. and Nat'l Resources*, 28 F.3d 1076, 1078 (11th Cir. 1994); *Berger v. Cleveland Clinic Foundation,* 2007 WL 2902907, *22 (N.D. Ohio)(rejecting Defendant's argument for decertification of the collective action because "while each class member may have individualized damages, the court finds that the main inquiry is common to all, namely, what the CCF's policy was regarding interrupted lunches").

If Plaintiffs prevail on liability, the calculation of damages in this action will be a complicated process. As Plaintiffs note, assessing damages will require examination of the time and payroll records for each of the named and opt-in Plaintiffs,[10] examining which weeks each plaintiff actually worked uncompensated overtime hours, their various rates of pay, and whether the plaintiff remains employed by FPL.[11] The Court agrees that it is neither efficient nor convenient to undertake damage calculations unless and until Plaintiffs have prevailed on the issue of liability.

---

[10] Plaintiff states that Defendant failed to supplement its discovery responses with regard to opt-in Plaintiffs who joined after notice was issued, or for Plaintiffs who continue to be employed by FPL. Doc. 224, p. 15. Defendant argues this complaint is disingenuous given Plaintiffs opposed Defendant's motion to extend discovery beyond the date when Consents to Join the collective action were due. Doc. 22, p.3, n.6. Regardless of the parties' disagreements regarding Defendant's production of time and payroll records, the complicated nature of damages calculation in this action is evident.

[11] Plaintiffs note the possibility, in a bifurcated trial, of ordering the parties to mediate the issues related to damages, should Plaintiffs prevail in the liability phase of trial. Doc. 224, p.13, n.10. The Court need not address the possibility of mediation in addressing the present motions.

Defendant's argument that bifurcation would be duplicative, wasteful, and prejudicial because it "is readily apparent that the evidence and testimony regarding liability and damages are entirely intertwined," is grounded in its rejection of the use of representative testimony to determine liability.[12]  Doc. 227, pp.8-10.  Having determined that representative testimony is appropriate and warranted on the issue of liability, the Court finds that consideration of convenience and efficiency overwhelmingly support bifurcation of the trial into liability and damages sections.

IV. <u>Conclusion</u>

Based on the foregoing, the Court finds that representative testimony regarding the Defendant's radio-monitoring policy is supported by the weight of the case law and appropriate in this FLSA collective action.  Also, given that assessment of Plaintiffs' damages, if any, will require comprehensive individual analyses, bifurcation of the trial into liability and damages portions furthers the parties' convenience and promotes judicial efficiency.

Accordingly, it is hereby **ORDERED**:

1. Plaintiffs' Corrected Renewed Motion for Representative Testimony at Trial on the Issue of Liability (Doc. 225) is **GRANTED**.

2. Plaintiffs' Corrected Renewed Motion for Bifurcation of Trial on the Issues of Liability and Damages (Doc. 224) is **GRANTED**.

---

[12] Defendant notes that in *Medtronic Xomed, Inc. v. Gyrus ENT LLC*, 440 F. Supp. 2d 1333, 1334 (M.D. Fla. 2006), the court denied a motion for bifurcation in a patent infringement case because of the overlapping evidence and testimony that would be heard in the proposed separate trials. However, the *Medtronic* court emphasizes the discretion afforded a district court to order a separate trial on any issue, noting "the paramount consideration must remain a fair and impartial trial to all litigants through a balance of benefits and prejudice." *Medtronic*, 440 F. Supp. 2d at 1334.

**DONE** and **ORDERED** in Orlando, Florida on June 1, 2012.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

**Copies furnished to:**
Counsel of Record