UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MARCOS ROMERO, ALBERT SALA,
JAMES KNAPP, STEPHEN PRATT,
LARRY BRYAN, JAMES HARTWELL,
JOHN RITTER, JACK MURPHY and
THOMAS CONNORS,

        Plaintiffs,

v.                                               Case No: 6:09-cv-1401-Orl-36TBS

FLORIDA POWER AND LIGHT CO.,

        Defendant.
_____/

**ORDER**

This cause comes before the Court upon consideration of Plaintiffs MARCOS ROMERO, ALBERT SALA, JAMES KNAPP, STEPHEN PRATT, LARRY BRYAN, JAMES HARTWELL, JOHN RITTER, JACK MURPHY, and THOMAS CONNORS ("Named Plaintiffs") and the Opt-In Plaintiffs' (collectively, "Plaintiffs") Amended Motion to Approve Settlement ("Motion to Approve Settlement") (Doc. 263). Pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), Plaintiffs request that the Court approve their settlement with Defendant Florida Power and Light Company ("Defendant" or "FPL") and dismiss the case with prejudice. *Id.* at pp. 1, 18. Defendant filed a Response to Motion to Approve Settlement ("Response") (Doc. 266). With leave of Court, Plaintiffs filed a Reply in support of their motion (Doc. 274). Upon consideration of the parties' submissions, relevant case law, and for the reasons that follow, the Court will grant Plaintiffs' Motion to Approve Settlement.

## I. BACKGROUND

Plaintiffs bring this action under the FLSA, alleging that their employer, FPL, failed to pay overtime wages for work over 40 hours per week.[1]  Complaint, Doc. 1, ¶¶ 13-21. Specifically, Plaintiffs seek overtime compensation for work performed during the meal period. *Id*. at ¶¶ 17-18; Doc. 166.  On October 14, 2010, the Court granted Plaintiffs' Motion to Authorize Notice to Potential Class Members and conditionally certified a class as a collective action.[2]  Doc. 159, p. 2.  On February 22, 2012, the Court denied Defendant's Motion for Decertification (Doc. 196), finding that Named Plaintiffs, Opt-in Plaintiffs, and members of the conditionally certified class were similarly situated for the purposes of an FLSA collective action (Doc. 212).

On June 1, 2012, the Court granted Plaintiffs' Corrected Renewed Motion for Representative Testimony at Trial on the Issue of Liability (Doc. 225) and Corrected Renewed Motion for Bifurcation of Trial on the Issues of Liability and Damages (Doc. 224). *See* Doc. 232.  The parties engaged in discovery for over two years.  Also, in preparation for trial, they engaged in substantive motion practice, including filing a Pretrial Statement, Witness and Exhibit lists and objections thereto, proposed jury instructions and proposed questions for voir dire, deposition designations and objections thereto, and motions *in limine*. *See* Docs. 234, 236, 240, 245, 252, 253.  On July 9, 2012, the parties filed their Trial Briefs.  Docs. 246, 248.  On

---

[1] Pursuant to 29 U.S.C. §207(a), the FLSA requires compensation at one and a half times the regular rate when employers cause their employees to work more than forty hours a week.

[2] The certified class included: "[a]ll hourly paid, first shift senior line specialists, line specialists, cable splicers, and groundsmen, who worked an eight and half hour shift, for Florida Power & Light Company (FPL), in FPL's Distribution Business Unit since July 21, 2007 who were required to monitor and/or respond to their portable or truck radios during the meal period and/or were restricted during their meal period from the free use of the meal period, and yet were not compensated for all of their overtime hours worked due to the deduction of thirty (30) minutes from their pay for such time."

July 30, 2012, a week before trial was set to begin, Plaintiffs filed a Notice of Settlement. Doc. 255.

## II.    APPLICABLE LAW

In *Lynn's Food Stores, Inc. v. United States Department of Labor*, 679 F.2d 1350, 1353 (11th Cir. 1982), the Eleventh Circuit explained that judicial review and approval of an FLSA settlement is necessary to give it final and binding effect. As the Eleventh Circuit held:

> [t]here are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees. First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them. . . . The only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations. When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness.

*Id*. at 1352-53. Before approving an FLSA settlement, the court must scrutinize it to determine if it is "a fair and reasonable resolution of a bona fide dispute." *Id*. at 1354-55. If the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id* at 1354.

In determining whether the settlement is fair and reasonable, the Court should consider the following factors:

> (1) the existence of collusion behind the settlement;
> (2) the complexity, expense, and likely duration of the litigation;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the probability of plaintiff's success on the merits;
> (5) the range of possible recovery; and
> (6) the opinions of counsel.

*Leverso v. South Trust Bank of Ala. Nat. Assoc.*, 18 F. 3d 1527, 1531 n. 6 (11th Cir. 1994); *Hamilton v. Frito-Lay, Inc.*, 2007 WL 328782, *2-3 (M.D. Fla. 2007). The Court should be mindful of the strong presumption in favor of finding a settlement fair. *Cotton v. Hinton*, 559 F. 2d 1326, 1331 (5th Cir. 1977).[3]

In order for the Court to determine whether the proposed settlement is reasonable, counsel for the claimants must first disclose the extent to which the FLSA claim has or will be compromised by the deduction of attorneys' fees, costs or expenses. *Zegers v. Countrywide Mortg. Ventures, LLC*, 569 F.Supp. 2d 1259 (M.D.Fla. 2008). When a plaintiff receives less than a full recovery, any payment (whether or not agreed to by a defendant) above a reasonable fee improperly detracts from the plaintiff's recovery.[4] Thus, a potential conflict can arise between counsel and their client regarding how much of the plaintiff's total recovery should be allocated to attorneys' fees and costs. It is the Court's responsibility to ensure that any such allocation is reasonable. *See Silva v. Miller*, 307 F. App'x. 349, 351-52 (11th Cir. 2009). In doing so, the Court uses the lodestar method for guidance. *See Comstock v. Florida Metal Recycling, LLC*, 2009 WL 1586604 at *2 (S.D. Fla. 2009). As the Court interprets the *Lynn's Foods* and *Silva* cases, where there is a compromise of the amount due to the plaintiff, the Court should decide the reasonableness of the attorneys' fees provision under the parties' settlement agreement using the lodestar method as a guide. In such a case, any compensation for attorneys' fees beyond that justified by the lodestar method is unreasonable unless exceptional circumstances would justify such an award.

---

[3] *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (all decisions from the Fifth Circuit prior to October 1, 1981 are binding on the Eleventh Circuit).

[4] From a purely economic standpoint, a defendant is largely indifferent as to how its settlement proceeds are divided between a plaintiff and his/her counsel. Where a plaintiff is receiving less than full compensation, payment of fees necessarily reduces the plaintiff's potential recovery.

### III.  ANALYSIS

This case involves a disputed issue of FLSA coverage, which constitutes a bona fide dispute.  *Lynn's Food Stores,* 679 F.2d at 1354.  Specifically, the parties dispute whether listening, monitoring, and responding to their radio means that Plaintiffs were not completely relieved of duty and entitled to compensation.  Doc. 263, p. 13.  Defendant believes that had this case been litigated, it would have prevailed in proving that Plaintiffs do not have "significant affirmative duties" during their 30-minute meal break and are therefore not entitled to compensation.  Doc. 266, p. 1.  Also, Defendant argues that it made "premium payments" to Plaintiffs in excess of any amount claimed as unpaid overtime.  *Id.*

In their proposed settlement, the parties agree to settle Plaintiffs' collective action claims in exchange for a release of all claims for a total sum of $ 700,000.00 ("Settlement Amount"), inclusive of all payments to Plaintiffs, and attorney's fees and costs.  *See* Settlement, Doc. 263-Ex. 1.  Each Plaintiff is to receive an equitable share of the "Distribution Amount", which is defined as the Settlement Amount, subtracting $25,000 in costs, $295,000 in attorney's fees, and $45,000 in service payments to the nine Named Plaintiffs ("Service Payments").  *Id.*; Doc. 263, p. 10 n.6.

#### A.  Parties' Agreed Terms

The parties agree to the proposed settlement in every respect other than the proposed allocation of $40,000 to the Named Plaintiffs as Service Payments.  *See* Doc. 263; Doc. 266, p. 2.  Upon reviewing the factors courts consider when evaluating the fairness of an FLSA settlement, the Court is satisfied that there is no evidence of collusion behind this settlement, as all parties were represented by counsel who are obligated to vigorously represent their client's interest.  *See Leverso*, 18 F.3d at 1531; *Id.* at 10, n.5.  Second, the Court agrees with the parties

that the significant pretrial discovery, extent of motion practice, and duration of complicated trial preparation in this action justify the proposed compromise of Plaintiffs' claims. *Id.* at 11-13. Moreover, in light of the credits and set-offs claimed by FPL which would reduce the overtime compensation owed to the class members, the Plaintiffs' compromise is reasonable.[5] 29 U.S.C. § 207(h); *see Kohlheim v. Glynn County*, 915 F.2d 1473, 1477 (11th Cir. 1990). With respect to the third factor, it is undisputed that the parties settled at a very late stage of the proceedings, after extensive discovery and motion practice. Doc. 263, pp. 2-7; *see Leverso*, 18 F. 3d at 1531.

With respect to the likelihood of success on the merits factor, Plaintiffs contend that because there is no binding Eleventh Circuit precedent on the issue of whether listening, monitoring, and responding to radio meant Plaintiffs weren't relieved of their duty during meal breaks, they had about a fifty percent chance of prevailing on the merits should this action have proceeded to trial. *Id.* at 13. FPL further argues that radio monitoring during meal breaks did not rise to the "significant affirmative responsibilities" necessary in the Eleventh Circuit to prevail on FLSA claims. *Kohlheim*, 915 F.2d at 1477; *Birdwell v. City of Gadsden, Ala.*, 970 F.2d 802, 807 (11th Cir. 1992) (question of whether time is compensable will depend on whether time is "spent predominately for the employer's benefit or for the employee's."). Accordingly, FPL maintains that Plaintiffs' likelihood of prevailing on the merits was very small. Doc. 266, p. 5.

---

[5] Plaintiffs explain that pursuant to the Collective Bargaining Agreement, FPL regularly paid Plaintiffs double time, including when they worked in excess of 16 hours in a day or worked on a scheduled day off. Additionally, on days where a Plaintiff worked more than 12 hours in a day, FPL paid a $13.00 meal credit, for which FPL claimed a set-off from any compensation owed. These credits/set-offs allegedly resulted in some employees having a negative balance owed. Doc. 263, p. 11, n.8.

In light of the foregoing, particularly the range of Plaintiffs' potential recovery and risks and costs of continued litigation, the Court finds that the proposed compromise of Plaintiffs' claims is fair and reasonable. *Leverso*, 18 F.3d at 1531.

### B. Attorneys' Fees

In order for the Court to determine whether the proposed settlement is reasonable, Plaintiffs' counsel must first disclose the extent to which the FLSA claim will be compromised by the deduction of attorneys' fees, costs or expenses pursuant to a contract between the plaintiff and his or her counsel. *Zegers*, 569 F.Supp.2d at 1259. In *Bonetti v. Embarq Management Co.*, 2009 WL 2371407 (M.D. Fla. 2009), the Court held that if the matter of attorneys' fees and costs is "addressed independently and seriatim" the Court may approve a settlement agreement without "separately considering the reasonableness of the fee paid to plaintiff's counsel." *Bonetti*, 2009 WL 2371407 at * 5.

Here, pursuant to the Settlement, Plaintiffs' counsel will receive $295,000 in attorneys' fees. Doc. 263, p. 16. Plaintiffs explain that this amount is substantially less than the lodestar amount, and that counsel is accepting 58% of the attorneys' fees actually incurred. *Id* (citing *Rutland v. Visiting Nurse Ass'n of Cent. Florida, Inc.*, 2008 WL 3833254, *2 (M.D. Fla. 2008) (finding that because the attorney's fee was far less than counsel would have earned should it have applied the lodestar method, the fee was reasonable)). Defendant represents that it takes no position with respect to the proposed allocation of attorneys' fees. Doc. 266, p. 6. In accordance with the Court's September 19, 2012 Order (Doc. 264), Plaintiffs submitted detailed affidavits and time sheets supporting the portion of the Settlement allocated towards attorneys' fees. *See*

Doc. 268-Exs. 1-2.[6] Accordingly, the Court finds that the allocation of Settlement proceeds between Plaintiffs and their counsel is reasonable.

### C. Service Payments to Named Plaintiffs

Although Defendant requests that the Court approve the parties' Settlement (Doc. 263-Ex. 1), it urges the Court not to approve the proposed Service Payments.[7] Doc. 266, pp. 2-8. First, Defendant argues that the requested $45,000 in Service Payments constitutes a prohibited conflict of interest between the Opt-in Plaintiffs who authorized the nine Named Plaintiffs to negotiate on their behalf *Id.* at 2 (citing *Grassick v. Avatar Properties, Inc.*, 2008 WL 5099942, *3 (M.D. Fla. 2008)). Although conceding that "some courts have approved payments to class representatives to compensate them for costs they incurred during the litigation", Defendant argues that the Named Plaintiffs fail to demonstrate they personally incurred any costs at all. *Id.* at 8; *Grassick*, 2008 WL 5099941 at *3. Further, Defendant argues that Plaintiffs' claim that the Named Plaintiffs faced "tangible risk" by suing their employer is unsupported. *Id.* at 8, n.8. Third, Defendant argues that the Plaintiffs have not shown that the efforts of the nine Named Plaintiffs "rise to the level of special circumstances warranting an incentive award." *Id.* at 3 (citing *Ayers v. SGS Control Services, Inc.*, 2008 WL 4185813, *5 (S.D. N.Y. 2008)). Finally, Defendant argues that because of the differences between Federal Rule of Civil Procedure 23 governing class actions, which require each class member to receive notice of extra payments to

---

[6] Plaintiffs submit the Affidavits of Gregg I. Shavitz, Maurice Arcadier, and Carlos Leach. Doc. 268-Exs. 1-3. Leach, an experienced FLSA litigator, affirms that the hourly rates and time charged by attorneys Shavitz and Arcadier are reasonable in light of the subject matter and complexity of this particular action, and the attorneys' particular expertise. Doc. 268-Ex. 3, ¶¶ 4-13.

[7] Defendant concedes that should the Court deny the Service Payments pursuant to its request, it would receive no financial benefit because the total Settlement Amount agreed to by the parties is $700,000. Doc. 266, p. 3 n.4; *see* Doc. 263-Ex. 1.

class representatives, and FLSA collective actions, which do not afford opt-in plaintiffs such protection, the cases upon which Plaintiffs rely are misplaced. *Id.* at 8-9.

Plaintiffs maintain that courts in the Middle District of Florida routinely support awarding service payments in FLSA cases. Doc. 274, pp. 1-3; *Hosier v. Mattress Firm, Inc.*, 2012 WL 2813960, *5 (M.D. Fla. 2012) (approving service payments to named plaintiff "[g]iven the amount of time and effort put forth by the named Plaintiff and original opt-in Plaintiffs and the inherent risk taken"); *Heath v. Hard Rock International (STP) Inc.*, 2011 WL 5877506 (M.D. Fla. 2011). In *Heath*, the Court explained that while there is no provision for a "representative plaintiff" under the FLSA, and generally no incentive payment to a named plaintiff is warranted, courts award incentive fees to named plaintiffs in FLSA cases who establish that they faced substantial risks by participating in the lawsuit and incurred actual expenses during the litigation. *Heath*, 2011 WL 5877506 at *6. For example, in *Su v. Electronic Arts, Inc.*, 2006 WL 4792780, *5 (M.D. Fla. 2006), the named plaintiff had to use four vacation days to attend hearings for the case, and he testified that he feared his career would be adversely affected as the result of suing his former employer. The court found this evidence was sufficient to support a $10,000 incentive fee recommended by all parties to the litigation. *Su*, 2006 WL 4792780 at *5.

In their Reply, Plaintiffs provide evidence of the time, effort, and risk taken by each of the Named Plaintiffs, including: (1) assisting in the case investigation; (2) assisting counsel with declarations; (3) responding to individual discovery including answering interrogatories; (4) preparing for, traveling to, and attending depositions; (5) regularly meeting with counsel and communicating with other plaintiffs about the case; (6) participating in the review of Defendant's discovery and assisting in the preparation for depositions of Defendant's

9

representatives; and (7) advising regarding the calculation of damages models.[8]  Doc. 274, pp. 3-6.[9]  Also, seven of the nine Named Plaintiffs are current employees of Defendant and thus face a risk of retaliation for their leadership in the case.  *Id.* at 4; *Hosier*, 2012 WL 2813960 at *5.[10]

Further, Plaintiffs argue that Defendant's reliance on *Grassick*, 2008 WL 5099942 is misplaced.  Doc. 274, p. 5.  While the *Grassick* court recognized that service payments are permitted for named plaintiffs in FLSA cases, it denied such an award in that particular case because the record did not support costs and risks incurred by the named plaintiff.  *Grassick*, 2008 WL 5099942 at *7.  In contrast, here Plaintiffs have provided significant evidence of the time, efforts, and risks supporting the award of service payments.  Doc. 274-Exs. 1-2; *see Hosier*, 2012 WL 2813960 at *5; *Heath*, 2011 WL 5877506 at *6; *Su*, 2006 WL 4792780 at *5.  Accordingly, the Court finds that the Service Payments to the Named Plaintiffs are warranted.  Also, Defendant's claim that the Service Payments will cause a conflict between the Named Plaintiffs and Opt-In Plaintiffs is unsupported.  It is also possible that the Opt-In Plaintiffs are grateful that the personal involvement and extra efforts of the Named Plaintiffs helped achieve their collective Settlement.  *See* Doc. 274, p. 5.

In conclusion, the Court finds that given the risks of continued litigation for both parties, the significant investment of time, effort and money into three years of discovery and motion

---

[8] Defendant argues that because Named Plaintiff Romero was not deposed in this case, and did not attend the second mediation in June 2012, he presents an example of a Named Plaintiff who did not make substantial sacrifices justifying a Service Payment.  Doc. 266, p. 8.  In their Reply, Plaintiffs explain that Romero attended at least five meetings with counsel and attended the depositions of Plaintiffs Murphy and Connors.  *See* Doc. 274, p. 3 n.4; Doc. 274-Ex. 2.  Also, as Plaintiffs note, Defendant determined which Plaintiffs they chose to depose.  *Id.*

[9] Plaintiffs submit evidence documenting specific discovery to which each Named Plaintiff responded, as well as specific examples of efforts undertaken by each Named Plaintiff.  *See* Doc. 274-Exs. 1-2.

[10] Additionally, Courts recognize that Named Plaintiffs who no longer work for defendant employer also face risks that future employment will be adversely affected by their prominent role suing their former employer.  Doc. 274, p. 4; *see Su*, 2006 WL 4792780 at *5.

10

practice, the proposed Settlement is fair and reasonable. *See Lynn's Food Stores,* 679 F.2d at 1354.

Accordingly, it is hereby **ORDERED and ADJUDGED**:

1. Plaintiffs' Amended Motion to Approve Settlement, filed on September 14, 2012 (Doc. 263) is **GRANTED.** The Settlement (Doc. 263-Ex. 1) is **APPROVED**, as it constitutes a fair and reasonable resolution of a bona fide dispute.

2. This action is **DISMISSED**, with prejudice.

3. The Clerk is directed to terminate any pending motions and deadlines and close this case.

**DONE** and **ORDERED** in Orlando, Florida on December 10, 2012.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

**Copies furnished to:**
Counsel of Record